[Crim. No. 192.   Third Appellate District.—October 23, 1912.]

## THE PEOPLE, Respondent, v. E. C. BRECKER, Appellant.

CRIMINAL LAW—UNAUTHENTICATED TRANSCRIPT—AFFIRMANCE—PROPER TRANSCRIPT PRESENTED ON PETITION FOR REHEARING—QUESTION OF REGULARITY—REVIEW UPON MERITS.—Though the original record in this criminal case, was not legally authenticated, and the judgment was properly affirmed on that ground; yet where upon petition for a rehearing, a legally authenticated transcript was presented, it will be permitted to be filed for the preferred purpose of a review of the case upon its merits, regardless of the question of regularity or propriety of such action; and the record will be treated as properly authenticated for such purpose.

ID.—ORDER GRANTING NEW TRIAL—DUTY OF COURT—QUESTION OF DOUBT—SOUND DISCRETION.—Where the trial court is of the opinion that a party prosecuted for crime has been convicted upon insufficient evidence, it is its duty to set aside the verdict by granting a new trial. But this does not mean that in every case of *doubt* enter-

tained by the court of the justness of the verdict of guilty, the jury's deliberations should be vitiated by a new trial. The exercise of the power to set aside a verdict should always be within the bounds of sound judgment and discretion, and not arbitrary.

Id.—Order Denying New Trial—Effect of Doubt—Presumption—Review upon Appeal.—Where the court has made an order denying a new trial its mere expression of doubt as to the sufficiency of the evidence, cannot be presumed to be inconsistent with its order as made, nor to authorize questions of fact to be reviewed upon appeal.

Id.—Obtaining Money by False Pretenses—Unauthorized Sale of Corporation Stock—Support of Verdict.—Where the defendant was convicted of the crime of obtaining money from the prosecuting witnesses by false pretenses that he was authorized to sell the stock of a corporation, which he had in fact no authority to sell, it is held upon a review of the evidence, that it is sufficient to sustain the verdict of conviction.

Id.—Dissolution of Prior Connection with Corporation—Want of Presumption of Continuance.—Notwithstanding the former connection of the defendant as a promoter of the corporation, the presumption that "a thing once proved to exist continues as long as is usual with things of that nature," embodied in subdivision 32 of section 1963 of the Code of Civil Procedure, does not apply, where the evidence shows that he ceased to be connected with the corporation, before the attempted sales of stock made to the prosecuting witnesses.

Id.—Absence of Prejudicial Error in Evidence or Charge of Court.—It is held that there is no prejudicial error in the rulings upon evidence or in the charge of the court.

Appeal—Reviewable Record—Duty of Court of Appeal—Finding—Alternative Dismissal or Affirmance.—Upon an appeal in a criminal case, it is about the first duty of the court of appeal to ascertain whether there is a record before it which may be legally reviewed, and if it finds that there is not such a record before it, the only alternative left, is to dismiss the appeal, or affirm the judgment.

Id.—Rule as to Review upon Appeal—Authenticated Record Required.—It is the settled rule in this state that the proceedings in the trial court cannot be reviewed upon appeal unless such proceedings have been authenticated in the mode pointed out by law or by the rules of the appellate court.

Id.—Unauthenticated Record—Reporter's Notes not Certified Under Oath.—Under section 1247 of the Penal Code both the original reporter's notes and each copy of a required transcript thereof must be duly certified under oath to be correct, and where the reporter's notes ordered to be written up, are not certified under oath, his certificate is wanting in one of the most vital of the requisites of

a proper or legal authentication of the record, and it must be deemed unauthenticated.

ID.—MANDATORY STATUTE.—The provision of section 1247 relating to the manner in which the reporter shall authenticate the transcription of his notes is mandatory, and anything short of the authentication so prescribed amounts to a failure to comply with an imperative command of the statute.

ID.—METHOD OF APPEAL—IMPROPER CERTIFICATE BY REPORTER—CERTIFICATE BY JUDGE A NULLITY.—Under the present method of taking appeals in criminal cases, where the record must be deemed unauthenticated for want of the proper certificate by the phonographic reporter, the judge's certificate, even if in substantial compliance with the statute, must be held to be a mere nullity, so far as any effect it may have as an authentication of the record on appeal.

ID.—EFFECT OF AUTHENTICATION OF RECORD—METHOD PROVIDED—SUBSTANTIAL DEPARTURE—AUTHENTIC APPEAL.—The authentication of the record on appeal of the proceedings of the trial court constitutes the evidence from which the reviewing court may determine whether the proceedings were had in the court below, and the legislature may contrive and provide any reasonable method of furnishing such evidence. When once the legislature prescribes a method for proving that the proceedings which are taken to a court of review have been had in the trial court, then any substantial departure from that method will render the appeal abortive.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Max Grimm, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, for Respondent.

HART, J.—The judgment and the order from which these appeals were taken in this cause were affirmed in an opinion filed in this court on September 17, 1912. (*Post*, p. 219, [127 Pac. 666].)

The ground upon which the affirmance was based was that there was not a legally authenticated record of the evidence brought up to this court. (Pen. Code, sec. 1247.)

The defendant, in due time, petitioned for a rehearing and, with the petition, submitted an amended certificate by the stenographic reporter who took the phonographic report of the testimony and other proceedings of the trial and asked that the case be reopened and that such amended certificate be substituted for the defective one attached to the transcript of the testimony. Said certificate, as so amended, being legally sufficient in all respects and the attorney-general being of the opinion that there is no legal objection to the allowance of the same, whereby the stenographic transcription will stand as having been properly authenticated, and as a review of an appeal upon the merits is always to be preferred, the rehearing asked for was in due time granted and the motion for the substitution of the amended certificate by the stenographer allowed. Therefore, without expressing any opinion as to the legal propriety in a court of appeal to allow a defective and insufficient authentication of a record on appeal to be corrected, we shall treat the record here as having been authenticated in conformity with the requirements of law and review the case upon the merits.

We are not to be understood, however, as receding from the position maintained in the former opinion filed herein as to the requisites of a proper authentication of the testimony received and other proceedings had at the trial of a criminal case or as to the defectiveness or insufficiency of the authentication of this record as it was originally brought to this court.

The information in this case charges the defendant with the crime of obtaining, on or about the 2d day of January, 1911, by false and fraudulent pretenses, the sum of one hundred and fifty dollars, from the prosecuting witnesses, Bert Romeroni and James Vernon. He was convicted by the jury, hence these appeals.

The general objections urged against the correctness of the judgment and the order are: Insufficiency of the evidence to justify the verdict, alleged errors in the rulings of the court upon the evidence, and alleged misdirection of the jury by the court in its charge upon the law of the case.

1. As to the point that the verdict was not justified by the evidence, counsel for the defendant emphasizes in his brief the fact that the judge presiding at the trial, according to

counsel, remarked, upon denying the defendant's motion for
a new trial: "I have my doubts upon the sufficiency of the
evidence, that the verdict should stand, but I will let the
higher court pass upon the question," and insists that the
observation thus made by the court was equivalent to the ex-
pression of an opinion that the evidence was insufficient to
justify the verdict and that in such case it was the court's
duty to order a new trial (*People* v. *Flood,* 102 Cal. 330, [36
Pac. 663] ; *People* v. *Knutte,* 111 Cal. 453, [44 Pac. 166]),
and that the court below having failed to do so after express-
ing such doubt, it is the duty of this court under such cir-
cumstances to reverse the order.

It is true that, where a trial court is of the opinion that a
party prosecuted for a crime has been convicted upon in-
sufficient evidence, it is its duty to set the verdict aside by
granting a new trial. As has often been said in the cases, the
determination of the facts is a matter which is exclusively
the attribute of the jury, and the latter's functions should
not be invaded or interfered with by the court; but, in all
trials at *nisi prius,* the court, in the last analysis, exercises
(and very properly so) a supervisory control over the action
of the jury, and where it is clear that the jury had failed to
intelligently and justly perform the duty cast upon them by
the law, it is, of course, the duty of the court, in the exercise
of such supervisory power, to vacate or set aside the verdict.
But this does not mean that in every case of *doubt* entertained
by the court of the justness of a verdict of guilty the result
of the jury's deliberations should be vitiated by the action
of the court in the exercise of its power to grant new trials.
The exercise of 'that power should always be within the
bounds of sound judgment and discretion, and not arbitrary.
A jury may have *some doubt* upon the question of the guilt
of an accused person, still even they would have no right to
acquit unless such doubt was a reasonable one. And a judge
may and in many cases doubtless does have *some doubt* as to
whether a verdict of guilty should have been returned and
yet such doubt might not be sufficient to generate an unequiv-
ocal opinion that the verdict was not justified, and when the
court is not of an opinion of that character as to a verdict of
guilty, it has no right to grant a new trial or to permit a
*doubt* not sufficient to create such an opinion to override the

20 Cal. App.—14

functions which are, under our law, peculiarly those of the jury.

In the present case we have a right to presume, from the fact that the motion for a new trial was denied, that the doubt of the court as to the justification of the verdict did not reach the dignity of such an opinion of the jury's conclusion as to warrant it in setting aside the verdict. We must assume, in other words, that had it entertained such opinion, it would have promptly done its duty by granting a new trial.

Now, then, if the trial court, in whose presence the witnesses testified, could not say upon a review of the evidence that the verdict was not justified, much less is this court in a position to do so, and, therefore, in the determination of the question whether the evidence supports the verdict, this court is no less to be governed by the rule that questions of fact cannot be reviewed by an appellate court unless they present questions of law than it would be had the court below expressed no doubt upon the sufficiency of the evidence to warrant and support the verdict. And thus viewing the evidence, we are not prepared to say that it does not sustain the findings of the jury.

2. It appears from the evidence that the defendant was connected in some way with a mining corporation, named and known as Dredger Mining Company, which had been organized for the purpose of mining, by the dredging process, the American River bottom, near Folsom, in Sacramento County.

It further appears that the defendant was introduced to Vernon by Romeroni at the Occidental Hotel, in the city of Stockton, somewhere in the neighborhood of the fifteenth day of December, 1910. Representing that he was the agent of the company mentioned, authorized as such to sell stock in the concern, Brecker, at that time and place, undertook to sell stock in said company to Vernon. After considerable talk, mostly by Brecker, who gave an elaborate description of the plans, properties, and prospects of the corporation, saying that the latter needed money with which to prosecute its business, hence the necessity for the sale of stock, and telling Vernon that, after purchasing the stock, he could visit and inspect the properties of the company and that if then he became dissatisfied with his bargain, he (Brecker) would return him (Vernon) the money paid for the stock, Vernon

refused to invest in the concern and at that time did not
do so.

Either on the first or second of January, 1911, however,
Brecker, accompanied by Romeroni, went to Holt's station,
in San Joaquin County, where Vernon was employed.
Brecker renewed negotiations with Vernon for the sale to the
latter of some stock in said corporation. Vernon testified
that, after the defendant had gone "over about the same
conversation we had in the hotel office" (referring to the first
conversation spoken of) he (Vernon) bought one hundred
shares of stock at $1.50 per share and gave his personal check
to Brecker for the sum of one hundred and fifty dollars.
Brecker thereupon assured Vernon that he would either de-
liver to him his certificate of shares when he (Vernon) went
to Sacramento on his way to visit the mine, or, in case that
he did not go to Sacramento, would mail the certificate to
his (Vernon's) address in Stockton or at Holt's station.
Vernon told Brecker that he could not go to the mine, and
he did not go there. On the fifteenth day of January, 1911,
Vernon again met Brecker, and the latter then said that he
had secured an option on five thousand shares of stock in
the same corporation, and tried to induce Vernon to purchase
some of said stock, but the latter refused to make any further
investment therein. Vernon never met Brecker after the
fifteenth day of January, 1911, and never received the cer-
tificate for the shares of stock for which he paid one hundred
and fifty dollars. Vernon declared that he believed the state-
ment of the defendant that he was the agent of, and as such
authorized to sell stock in and for the Dredger Mining Com-
pany, and that upon that representation and the belief that
the investment would result profitably to him, he purchased
the stock.

The witness, Romeroni, corroborated Vernon in some par-
ticulars as to the first conversation which occurred between
the latter and the defendant at the Occidental Hotel. Among
other things, he said he heard Brecker say to Vernon that he
(Brecker) was the "authorized agent" of the Dredger Min-
ing Company. This witness also corroborated Vernon as to
the conversation and transaction in which the latter purchased
the stock on the first or second of January, 1911. He further
testified that, at about that same time in January, the defend-

ant in his presence sought to sell stock to other persons in San Joaquin County, and that in each of those instances he announced that he was the "authorized agent" of the corporation.

C. M. Beckwith, who was, at the time of the trial, in the latter part of April, 1912, and had been for about two years prior thereto, secretary of the corporation, testified that the defendant was neither an agent of nor authorized to sell the stock of the corporation during the month of January, 1911. In other words, he said that the accused was, in no capacity, connected with the corporation at that time.

The deputy sheriff who arrested the defendant upon the charge alleged in the information, testified that the defendant admitted to him that he was not an agent of the company at the time of the transaction involved here.

The defendant's story was, in substance, that he was authorized to sell stock for the corporation, and that at the same time he had individual stock belonging to certain stockholders for sale. He was not, however, very clear as to whether the stock he claimed to have sold to Vernon and Romeroni was the company's stock or the individual stock referred to.

We think, as before declared, that the record discloses a sufficient case against the accused to foreclose just interference with the verdict by this court. It may be conceded that the evidence as to the precise statements or representations made by Brecker at the time that he succeeded in consummating the alleged sale of stock to Vernon is not as satisfactory as it is evident that it could have been made. Neither Vernon nor Romeroni directly testified as to the exact representations that the defendant made on that occasion. Romeroni did say, however, that at about that time he heard the defendant declare to others to whom he undertook to sell stock in the corporation that he was its "authorized agent," and Vernon testified that the defendant repeated "about the same conversation" that occurred between them at the Occidental Hotel in the middle of December, 1910. In that conversation, it will be recalled, Brecker, according to both Vernon and Romeroni, represented that he was the agent of the corporation, with authority to sell its stock. It would, of course, have been the proper course to have required the witnesses to repeat exactly or as accurately as they could the statements

made by the defendant when he made the purported sale to Vernon and Romeroni (and, it may be suggested, the duty to do so rested as much upon the attorney for the defendant as upon the district attorney); still, the jury were authorized to infer from Vernon's testimony that the defendant, on the occasion on which he sold the stock to Vernon and Romeroni, repeated the representations as to his authority to sell stock for the corporation that he had made to Vernon in the preceding month of December.

Counsel contends, however, that the testimony conclusively shows that the defendant was a promoter of the corporation from the time of its organization, and as such authorized to sell its stock, and that there is no evidence showing that he had ever been dismissed from that relation with the concern, or that he had ever ceased representing it in that capacity. Upon this contention counsel undertakes to establish the continuation and existence of the authority in the defendant to sell the company stock at the time of the Vernon transaction by invoking the application of the presumption that "a thing once proved to exist continues as long as is usual with things of that nature." (Code Civ. Proc., sec. 1963, subd. 32.) But, conceding it to be true that the defendant was, in point of fact, authorized to sell stock for the corporation up to January, 1911, the testimony of the secretary of the corporation that he was in no way connected with the concern in the month of January, 1911, when he had the transaction involved here with Vernon and Romeroni, precludes any ground for the operation of the presumption referred to, for the presumption thus sought to be invoked is merely a disputable one which must give way to the force of any credible testimony introduced to overcome it. And from that testimony of the secretary, the jury were perfectly justified in inferring that if, at some previous time the defendant was authorized to sell stock for the company, his authority in that regard had been revoked and did not exist when he obtained one hundred and fifty dollars from Vernon and Romeroni in consideration of stock in the corporation.

As to the defendant's story, it is to be remarked that it is not difficult to understand how the jury could have justly disbelieved it in view of the fact that the district attorney showed that, at the preliminary examination of the charge

set forth in the information, the accused, testifying for himself, declared that he was not, nor did he pretend to be, the agent of the corporation when he had the transaction with Vernon.

But there is no need of further examination of the testimony in this opinion. It is enough to finally say, as we have in effect before declared, that we are satisfied that no doubt can reasonably arise from the record as it is presented here, that the evidence, whether, in point of fact, it was or was not of sufficient probative force to *justify* the jury in returning a verdict of guilty, nevertheless, as a matter of law, supports it, and this conclusion is as far as an appellate court is required to go in passing upon the question whether it is or is not authorized to set aside a verdict upon the evidence.

3. The objection to the ruling allowing the witness, Vernon, to state all that was said by Brecker in their conversations about the stock and the purchase thereof is not substantial. The particular criticism of said ruling is based upon the statement by the witness that the defendant, when trying to sell the stock to Vernon, said that he owned a large quantity of land in Mexico, that his taxes amounted to five thousand dollars a year, and that he had to raise money to pay the same; that he expected within thirty days to get money from his land, and then he hoped to buy up all the stock in the corporation which he had sold or might sell around Stockton. This statement was very likely made by the defendant to Vernon to inspire in the latter confidence, not only in the investment but in the integrity and good faith of the defendant himself, and if that was the defendant's purpose in making it, and it had been shown to be false, it would have been proper, not as proof of the alleged false representation upon which the defendant induced Vernon and Romeroni to buy the stock, but as constituting a part of the scheme by which the defendant sought to imbue the prosecuting witnesses with the belief that his representations were true. In this view, it would have been considered as part of the transaction. But the statement was not shown to have been false, and the effect of allowing it to go before the jury as verity, so far as a direct contradiction of it was concerned, could certainly have done the defendant no damage. Moreover, the court pointedly instructed the jury that the only representation alleged

in the information to be false, and to the consideration of which, in deciding the question of the guilt or innocence of the accused, they were to confine their deliberations, was that he was the agent of the corporation, and as such authorized to sell its stock.

4. Vernon was permitted, over the objection of the defendant, to relate a conversation which occurred between him and the defendant on the fifteenth day of January, or about two weeks after the happening of the transaction upon which this charge is founded. It is claimed that the court prejudiced the rights of the defendant by that ruling. The witness testified that the defendant, at the time mentioned, said to him that he had secured an option on five thousand shares of the company's stock, and that he offered him (witness) two hundred shares thereof for one hundred dollars. Brecker's statement that he had so secured that number of shares in the stock of the corporation was not shown to be untrue, and, conceding that the testimony relative thereto was not relevant, which we do not decide, we fail to see wherein it could have resulted in possible harm to the defendant.

5. The witness, Romeroni, who swore to the complaint filed in the justice's court against the defendant, charging him with the crime stated in the information, testified, on cross-examination, that the money—one hundred and fifty dollars —paid for the stock purchased by him and Vernon was not his (the witness's) money. Counsel for the defendant thereupon offered and the court received in evidence the complaint filed in the justice's court, which, among other things, alleged that said money was the personal property "of the said Bert Romeroni and the said James Vernon." Thereafter the court allowed the witness to explain that, although Vernon paid Brecker the one hundred and fifty dollars through his personal check, Romeroni and Vernon, by previous agreement, each paid an equal amount for and thus became joint owners of the stock so purchased. This testimony is complained of here as irrelevant and prejudicial. The ruling was eminently proper. A witness will always be permitted to explain his testimony, where it is necessary to do so, for the purpose of relieving it, if thus it can be done, of any apparent inconsistency by which it may be characterized.

6. A letter, written at Sacramento by the defendant, dated January 20, 1912, and addressed to the manager of the hotel at which the former stopped while in the city of Stockton, and in which the defendant stated that he was sick and requested the manager to ''pack my stuff until I come down, as I do not like to pay $2.00 a day for a room,'' etc., was received in evidence upon the theory that it tended to confirm the hypothesis of flight upon the part of the accused, it having been further shown by the assistant manager of said hotel that the defendant never called for his baggage. The defendant's home was in Sacramento and we can perceive little if any force in the letter as proof of flight. Flight by one who has committed an act which to all appearances is felonious may be shown upon the theory that it is evidence of a consciousness or a sort of admission by conduct of guilt and it implies that the party is thus trying to escape detection or apprehension, or both. The mere going away from the scene of a crime is not always flight in the sense that evidence is thus furnished of a consciousness on the part of the party that he has commited a public wrong. That element in the proof of guilt should, therefore, never be gone into unless the testimony available for that purpose is clear and convincing that the accused party left the scene of the act which is charged against him as a crime because he realized that he had committed a crime, lest by such insinuation, based upon circumstances not worthy of consideration, irreparable harm to the right of the accused to a fair trial may be committed. But the letter objected to here would seem rather to show that the defendant made no attempt to flee than that it was his purpose in leaving Stockton to get away from probable arrest and prosecution, otherwise he would not have boldly made his whereabouts known to be at a place only a short distance from the scene of the transaction which has brought about his conviction of a felony. And it is this view of the contents of the letter—a view which the jury probably took of it—that rendered its admission in evidence in no degree subversive of the defendant's just rights. Neither is there any merit in the contention that the letter was prejudicial in that it might have been construed by the jury as containing an insinuation that the defendant left without paying for his room. The letter itself merely stated in effect

that the defendant desired to give up the room because, by reason of illness, he could not go to Stockton and occupy it and that he did not wish to be under the expense of maintaining the room when he could not utilize it.

7. It was not error to allow the witness, Beckwith, to say that the defendant was not, in the month of January, 1911, authorized to sell stock for the company. The criticism directed against the legal propriety of this testimony is more in the form of an argument than an objection, for it goes to its weight rather than to its competency, the ground of criticism being that because Beckwith had previously declared that he could not answer a similar question and made certain statements indicating that he could not know whether the defendant was authorized during the month mentioned to sell stock for the corporation, the testimony was objectionable and should not have been allowed.

8. The deputy sheriff, who arrested the defendant, testifying for the people, said that, after he had taken the accused into custody, the latter stated to him that he (defendant) was not an agent of the company, but merely had an option on stock. This testimony is now denounced as improper because, purporting to disclose a confession of the defendant, it was not admissible until there was first some proof tending to establish the *corpus delicti*. Conceding that the statement of the defendant as shown by the testimony of the deputy sheriff constituted a confession, the objection here urged against it is not good, for it was not given in evidence until after the representations upon which the defendant disposed of the stock to Vernon were shown, and the testimony of Beckwith that the defendant had no connection with the company and was not authorized to sell its stock when said sale was made was given. Besides, the defendant did not make the objection at the trial that he now makes to the officer's testimony—indeed, he in reality made no objection to it at all, his only objections having been addressed to the forms of the preliminary questions which were designed to lay the foundation for the testimony of the extrajudicial statement of the defendant.

9. A number of witnesses to whom the defendant had previously sold stock in the same corporation upon the representation that he was the agent of and authorized to sell stock for said company, and to whom he failed to deliver certificates

therefor, although they paid for the stock, were allowed to testify to those transactions against the defendant's objections that such testimony was of other offenses than the one charged. We think the testimony was clearly proper under the doctrine laid down in many of our cases, of which the case of the *People* v. *Whalen*, 154 Cal. 472, [98 Pac. 194], is now the leading one, and which clearly explains the circumstances under which testimony of other crimes than the one charged may be received upon the question of the intent with which the act involved in the crime set forth in the information under inquiry was committed.

10. The objection that the court, in its rulings, limited the scope of the investigation to the question whether the defendant was or was not the agent of the corporation when he sold the stock to Vernon is untenable. The court, in ruling on one question, did remark that the only issue in the case was whether the defendant was such agent at the time referred to, but, notwithstanding that remark, the court, nevertheless, allowed full inquiry into all the elements constituting the offense. The jury could not, therefore, have been misled or confused by the remark of the court, as counsel contends, and this proposition must become the more manifest when it is considered that the court in very clear language instructed the jury that these facts must be proved in order to establish the guilt of the accused: 1. That the defendant made the statement alleged to have been false, to wit: that he was the duly authorized agent of the Dredger Mining Company; 2. That such statement was false; 3. That defendant knew or believed such statement was false when he made it; 4. That the complaining witnesses believed such statement to be true, were deceived by it, and that such statement was the principal cause which induced them to part with their money.

11. And this leads us to observe that the criticism of the instructions given by the court upon the foregoing propositions involving the elements of which the crime charged is constituted is altogether unfounded.

The charge of the court upon all the features of the case as presented by the information and the evidence was exhaustive, expressed in perspicuous language and fair. It is not necessary to examine said instructions in detail in this

opinion. It is deemed enough to say that no one can read them without concluding that they clearly and accurately state the law applicable to the crime as charged.

But it is urged that the court, in the matter of its charge, was guilty of an omission which seriously militated against the rights of the accused by failing to instruct the jury that the testimony received of other similar transactions to the one involved here could be considered by them only for the purpose of gathering light upon the intent with which the act charged was committed. While it is true that the court did not instruct upon the proposition referred to, it did, in ruling upon the admissibility of such testimony, frequently declare that it was limited to that purpose and that it must be so regarded and considered by the jury. While it would have been better for the court to have thus specially instructed the jury, it cannot be held that failure to do so under the circumstances resulted in injury to the defendant.

We have now specially considered the more important points urged for a reversal, and, as must be apparent, have been able to discover no sound legal reason for disturbing the result.

The judgment and order are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 20, 1912.

The following is the opinion of the district court of appeal, rendered on the seventeenth day of September, 1912, referred to, and the conclusions of which are adopted in the foregoing opinion:

HART, J.—The defendant was convicted of the crime of obtaining from one Bert Romeroni and one James Vernon, on or about the second day of January, 1911, the sum of one hundred and fifty dollars by false and fraudulent pretenses. He appeals both from the judgment and the order denying a new trial.

The attack upon the judgment and the order is based upon the asserted insufficiency of the evidence to justify the verdict of conviction, and certain rulings of the court admitting and rejecting certain evidence.

The attorney-general has submitted a motion to dismiss the appeal upon the ground that the appellant failed to file, within five days after taking the appeal from the judgment and the order, with the clerk of the court in which the action was tried and present to said court "an application . . . stating in general terms the grounds of the appeal, and the points upon which the appellant relies, and designate what portion of the phonographic reporter's notes it will be necessary to have transcribed to fairly present the points relied upon." (Pen. Code. sec. 1247.)

The resistance to the foregoing motion is based upon an affidavit of the trial judge, filed in this court, setting forth that all the requisites of section 1247 in the respect referred to by the motion were duly complied with. But it will not be necessary to consider the motion or, in this opinion, the questions arising therefrom, viz., whether the law requires the record on appeal to show that the provisions of section 1247 of the Penal Code in the particulars to which the motion relates have been complied with, and, if so, whether, in the absence of such a showing, the affidavit of the trial judge affirming a compliance therewith constitutes competent authentication of the fact; for there is before us no properly authenticated transcription of the record in this cause and, therefore, nothing that we are authorized to review advantageously to the appellant. This point is not included among the grounds upon which the motion to dismiss the appeal is based, but the attorney-general has called our attention to it in his brief, and even if he had failed to do so, about the first duty of a court of appeal in any case is to ascertain whether a record which may be legally reviewed is before it, and if it finds that there is not, there is no other alternative left to it but to dismiss the appeal, or affirm the judgment.

Section 1247 of the Penal Code, among other things, provides that the original and each copy of the transcription of the stenographic reporter's notes ordered by the court to be made shall by the reporter be duly certified *under oath* to be correct.

Section 1247a of said code provides, *inter alia,* that the judge shall, unless objection is made to the transcript by either the defendant or the district attorney, within ten days after receipt thereof by him, certify on the transcript that no objection has been made thereto within the time allowed by law, and after so certifying shall immediately redeliver the same to the clerk; or, if objection to the transcript be made, the judge must immediately hear and determine the objection, and, if the objection is found to be good, must correct the same, whereupon he must certify that all objections to the transcript have been heard and determined, and the same corrected in accordance with such determination, and thereupon immediately redeliver the same to the clerk.

The reporter has not in this case certified *under oath* to the correctness of the transcription of the portion of his notes which the court ordered written up, but has merely annexed to the transcript a naked statement, in the form of a certificate, that said transcript is correct. Nor is the form of the judge's certificate strictly in harmony with the requirements of section 1247a, it containing no statement either that no objections were made to the transcript, or, if any were made, the same were heard and determined and the transcript accordingly corrected. But waiving any question as to the sufficiency of the judge's certificate, it is obvious that the reporter's certificate is altogether insufficient and does not involve that authentication of the transcript of the proceedings which the statute imperatively requires. Under the present method of taking appeals in criminal cases, the judge's certificate, even if such a one as the judge's certificate here may be said to be in substantial compliance with the statute, must be held to be a mere nullity, so far as any effect it may have as an authentication of the record on appeal, where, as is true here, the phonographic reporter's certificate is wanting in one of the most vital of the requisites of a proper or legal authentication.

The supreme court of this state has uniformly held that the proceedings in a trial court cannot be reviewed on appeal unless such proceedings have been authenticated in the mode pointed out by law or the rules of the courts of appeal. (*People* v. *Martin,* 32 Cal. 91; *People* v. *Ferguson,* 34 Cal.

309; *People* v. *Armstrong,* 44 Cal. 326; *People* v. *Long,* 121 Cal. 495, [53 Pac. 1097] ; *People* v. *Terrill,* 131 Cal. 112, [63 Pac. 141] ; *People* v. *Schulz,* 14 Cal. App. 106, 109, [111 Pac. 271].)

In the Schulz case although the question did not directly arise, the court of appeal of the first district, referring to the failure of the stenographer to certify *under oath* to the correctness of his transcript, says: "Even if appellant was entitled to adopt the method prescribed by sections 1247 and 1247a of the Penal Code, for bringing to this court the evidence in the case, which we do not believe, he has not complied with the provisions of said sections." The intimation from the foregong is that, in order to render the record made up according to the method prescribed by sections 1247 and 1247a of the Penal Code reviewable on appeal, there must be among other requisites, a certificate *under oath* by the phonographic reporter that the transcription of the portion of his notes ordered transcribed by the court is correct.

But there can be no doubt that the provision of section 1247 relating to the manner in which the reporter shall authenticate the transcription of his notes is mandatory and that anything short of the authentication so prescribed amounts to a failure to comply with an imperative command of the statute. If the authentication may be held sufficient without the oath of the reporter, then with equal reason may it be held that the mere subscription of the reporter's name to the transcript without a certificate of any kind would be sufficient to satisfy the statute. The authentication of the record on appeal of the proceedings of the trial court constitutes the evidence from which the reviewing court may determine whether the proceedings were had in the court below, and the legislature may contrive and provide any reasonable method of furnishing such evidence; and when once the legislature prescribes a method for proving that the proceedings which are taken to a court of appeal for review have been had in the trial court, then any substantial departure from that method will render the appeal abortive.

However much it may always be desirable to dispose of cases brought to the appellate courts upon their merits, we are not at liberty to ignore or disregard the plain mandates of the statute as to the method of proving to such courts that

the record on appeal contains a correct reproduction of the proceedings which it is desired shall be reviewed.

The judgment and order must be affirmed, and it is so ordered.

Burnett, J., and Chipman, P. J., concurred.