[Crim. No. 5006. In Bank. May 19, 1950.]

THE PEOPLE, Respondent, v. CARYL CHESSMAN,
Appellant.

Caryl Chessman, in pro. per., for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, W. E. Simpson, District Attorney (Los Angeles), J. Miller Leavy and Robert Wheeler, Deputy District Attorneys, for Respondent.

SCHAUER, J.—Defendant has pending before this court an appeal from judgments of conviction of 17 felonies. Two of these judgments impose the death penalty. The appeal from the judgments, however, has not yet been submitted for decision and this opinion does not consider such appeal on its merits but is addressed exclusively to disposition of the mesne proceedings hereinafter specified.

In the subject proceedings defendant, who has chosen to represent himself throughout the litigation, has filed with this court his "Motion for order of Supreme Court to order Superior Court to augment, correct and properly certify record, to order a hearing in the Superior Court relative to this matter, and for the Supreme Court to agree to decide on appeal (or otherwise) certain undecided questions of law relative to the preparation of a reporter's transcript for use on appeal in a capital offense and the applicability of section 953e C.C.P. to criminal cases," his "Motion to dismiss automatic appeal without determination," with written argument in support of each motion; he has noticed and briefed an appeal "from the final order of settlement and so-called certification of the reporter's transcript"; and he has filed a "List of inaccuracies and omissions in the record."

The burden of defendant's complaint is that the reporter's transcript on appeal was not prepared in the manner required by law, that it is not complete and accurate, and that no complete, accurate and legally prepared record can be obtained. The transcript was prepared in a situation for which the Rules on Appeal do not expressly provide. After a jury had found defendant guilty, the court reporter died without having completed his transcript. The transcript which has been filed with this court was in part prepared, pursuant to court order, by another reporter from the notes of the original reporter. We have concluded that the transcript before us, with certain augmentations hereinafter described, will permit a just and fair disposition of the appeal on its merits.

The official court reporter, Mr. Perry, prior to his death, made dictaphone records of part of his notes. A portion of these records had been transcribed before Mr. Perry's death, and the transcription of the remainder was completed after his death, by a transcriber who had been employed by Mr. Perry for many years. Pursuant to court order another official court reporter, Mr. Stanley Fraser, read and transcribed the balance of Mr. Perry's notes in rough draft form. He was aided in this by voluminous notes which had been taken by the judge during the trial. The deputy district attorney who tried the case read the rough draft, and Mr. Fraser copied it in final form. A copy was sent to defendant, who was confined in San Quentin, and he submitted a written "Motion to augment and correct record" in which he requested a number of specific changes and made a number of general complaints that large parts of the proposed tran-

script were inaccurate and incomplete. The transcribing reporter, with the deputy district attorney who tried the case, checked these claimed inaccuracies against the original reporter's notes and found that some changes should and others should not be made. The trial judge then heard defendant's written objections to the transcript, allowed some and disallowed others. Mr. Fraser has certified that the transcript prepared by him is ''a full, true and complete transcript of said shorthand notes of said Ernest R. Perry, deceased, upon said trial to the best of my ability.'' The trial judge has certified that ''the objections made to the transcript herein have been heard and determined and the same is now corrected in accordance with such determination . . . and the same is now, therefore, approved by me.''

The trial judge directed preparation of the reporter's transcript in the manner above described in an effort to substantially comply with rule 33(c) of the Rules on Appeal. That rule provides, ''Where a judgment of death has been rendered and an appeal is taken automatically as provided by law, the entire record of the action shall be prepared.'' The ''entire record'' consists of reporter's and clerk's transcripts (the customary record on appeal from a judgment of conviction) containing both ''normal record'' (rule 33(a)) and ''additional record'' (rule 33(b)).

Rule 35(b) provides that ''The reporter shall prepare . . . the reporter's transcript . . . and shall append . . . a certificate that it is correct.'' Rule 36(a) provides that ''The parties may present the appeal on an agreed statement'' and rule 36(b) provides that ''If a transcription of any part of the oral proceedings cannot be obtained for any reason, the appellant, as soon as the impossibility of obtaining a transcript is discovered, may serve and file an application for permission to prepare a settled statement in place thereof.'' There is no express provision for a situation such as the present, where literal compliance with rule 35(b) has become impossible without fault of any party and where defendant-appellant has not chosen to appeal on an agreed statement.

 It is defendant's position that he is entitled, as a matter of absolute right, to a reporter's transcript prepared in literal compliance with rule 35(b), that in the absence of such a transcript this court cannot determine his appeal, and, hence, that he is entitled to a new trial. Prior to the adoption of the Rules on Appeal in 1943, an appellant had no such right to a transcript prepared in a particular manner. Fur-

thermore, neither the death of a reporter nor impossibility of procuring a transcript is a ground for granting a new trial. Section 1181 of the Penal Code provides that "When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial, *in the following cases only:*" (Italics added.) It enumerates seven grounds, none of which encompasses the situation depicted here.

Defendant cites many early cases for the proposition that if the record is not authenticated in accord with the applicable rule or statute the appellate court cannot consider it. These cases do not aid defendant; they so hold, but they further hold that because the record is not proper the appeal will be dismissed or the judgment of conviction affirmed. The rules in effect immediately prior to the adoption of the present Rules on Appeal required that "If a transcription of the phonographic reporter's notes cannot, for any reason, be obtained, the appellant shall cause to be prepared and filed, in the place thereof, a statement of such of the proceedings as were or shall be ordered by the court to be transcribed." (Rule II, § 9, 213 Cal. xli.) If the appellant did not file such record his appeal could be dismissed. (Rule V, § 1, 213 Cal. xliii.) ▆ We do not believe that the 1943 Rules on Appeal were intended to so radically change the law that an appellant is now not only relieved of the burden of furnishing a statement on appeal where a transcription of the reporter's notes cannot be obtained, but also absolutely entitled to a transcription of those notes made and certified by the reporter who took the notes.

▆ Rather, where literal compliance with the rules has become impossible without fault of anyone, and we are confronted with a situation not expressly covered by the rules, we should inquire whether there is or can be made available a record on which this court can perform its function of reviewing the cause and determining whether there was error in the court below and, if so, whether such error requires reversal. If a record can be "prepared in such a manner as to enable the court to pass upon the questions sought to be raised" (3 Am.Jur. 212), then there is no rational likelihood or legally cognizable possibility of injustice to the appealing defendant even though a verbatim record certified by the official court reporter cannot be supplied.

▆ Defendant, as stated above, urges that the reporter's transcript filed with this court is not, and cannot be made, complete, accurate, and adequate for a fair disposition of his

appeal. Concededly the reporter's transcript filed in this appeal is not a verbatim record of every word that was said in the trial court. But it is certified to be "full, true and correct . . . to the best of [the transcribing reporter's] ability"; and the trial court determined that the transcribing reporter's ability was sufficient to produce an adequate record. Although reporters who live until their transcripts have been typed, whether by themselves or as is more usual by their transcribers from their dictation, attach to the transcript a certificate, in the language of rule 35(b), "that it is correct," reality requires us to recognize that such certificate means no more than that the transcript is correct to the best of the particular reporter's and the transcriber's abilities. ■ Certainly it is to be expected that a reporter can read his own shorthand notes better or more easily than those of another reporter; but this does not mean that in no case can one good reporter read and transcribe with substantial accuracy the notes of another. It is essentially a question of fact to be determined in each case in which it may arise. Here the trial judge, aided by his own copious notes, has determined that the record is adequate. Conceivably, the respective and particular abilities of the reporters and transcribers in this case may have produced a record as complete and accurate as a record in some other case wholly taken, transcribed and certified by a single reporter. The minimum statutory requirements for court reporters (immediate transcription of material dictated at the rate of 150 words per minute for five minutes; Code Civ. Proc., § 270) obviously do not insure that all official reporters can produce altogether complete and accurate transcripts of lengthy trials wherein testimony and argument are rapidly presented over extended periods.

It should also be noted that the Rules on Appeal contemplate that no reporter is infallible, that errors may exist in a proposed transcript, that corrections may be proposed and that it shall be the duty of the trial judge to finally determine the record. (See rule 12 relating to "Augmentation and correction of the record"; rule 35(c), providing that "If a proposed correction is filed, the judge shall promptly determine the matter. After corrections have been made, the judge shall certify that all objections made thereto have been determined, and that the transcripts have been corrected in accordance with such determination"; and rule 36(b), providing that "If a transcription of any part of the oral proceedings cannot be obtained for any reason, the appellant,

as soon as the impossibility of obtaining a transcript is discovered, may serve and file an application for permission to prepare a settled statement in place thereof.'')

The Rules on Appeal are intended to simplify and facilitate appellate procedure, not to provide for new trials on grounds which did not theretofore exist and which are not necessary to the fair administration of justice. On this appeal, as in every appeal, it is to be presumed that defendant has been accorded a fair trial and that the judgment of conviction is valid. We perceive no legal impropriety and no unfairness in placing on an appellant in the situation of Chessman the burden of showing either prejudicial error in the record or that the record is so inadequate that he is unable to show such error. Inconsequential inaccuracies or omissions in a record cannot prejudice a party; if in truth there does exist some consequential inaccuracy or omission, the appellant must show what it is and why it is consequential. The situation is similar to that in *People* v. *Botkin* (1908), 9 Cal.App. 244, 249 [98 P. 861], where the court said, "we know of no rule that permits us to presume that defendant did not have a fair trial because a portion of the record upon . . . appeal has been destroyed without fault of either party."

In the absence of a showing of prejudice in the record, or of prejudicial inadequacy in its content, we must give heed to the repeatedly declared policy of this state relating to criminal appeals. "After hearing the appeal, the court must give judgment without regard to technical errors or defects . . . which do not affect the substantial rights of the parties." (Pen. Code, § 1258.) "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right." (Pen. Code, § 1404.) "No indictment . . . is insufficient, nor can the trial, judgment, . . . or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (Pen. Code, § 960.)

Examination of the record in the light of defendant's claims discloses that it is adequate to permit us to ascertain whether there has been a fair trial and whether there has been any miscarriage of justice. The record is not, as defendant asserts, "unintelligible" in material part. It clearly shows (and there is no claim that it is insufficient or incorrect in

this regard) the substance and the nature of the People's case and the substance and the nature of the defense of Chessman: Victims of the crimes testified for the People that certain criminal acts were committed and identified defendant as the person who committed them (except in one instance, a count of grand theft, where defendant was connected with the crime by evidence that the property was found in his possession); defendant denied that he committed the crimes and witnesses for him testified to alibis for some of them. The record appears to contain ample evidence to support the verdicts and there is no suggestion that this evidence was not actually received at the trial. Appraisal of the sufficiency of the evidence, insofar as any contention of the defendant is concerned, presents no problems of gradations of possible states of mind of defendant, but only the questions whether certain behavior (which the People's witnesses testified and the jury believed was behavior of defendant) constituted kidnaping for the purpose of robbery with bodily harm, first degree robbery, attempts at robbery and rape, violation of section 288a of the Penal Code, and grand theft.

The asserted "inaccuracies and omissions in the record" of which defendant complains are as follows: (a) The greater part of defendant's complaints consists of general claims that large portions of the transcript of testimony of witnesses are incomplete or inaccurate. Defendant does not claim that any different and more accurate transcription of the notes would show that the trial court erroneously admitted or excluded any evidence. Certainly no factual basis is shown, and none is even claimed, for concluding that any erroneously admitted or excluded evidence prejudicially affected the verdicts. Claimed inaccuracies concern conflicting testimony and the credibility of witnesses. Making available to this court the precise words of every witness would not enable it to upset the jury's determination that the People's witnesses, rather than defendant and his witnesses, spoke the truth. As in *People* v. *Botkin* (1908), *supra,* p. 249 of 9 Cal.App., "Under the condition of the evidence in this case [or any factual variation of the record suggested by defendant] .... any views that we might have as to the credit that should be given to the evidence . . . could not justify us in reversing the judgment founded on the verdict of the jury that heard and saw all the witnesses as they gave their testimony." (b) Defendant asserts that the record is mistaken in showing that he did not cross-examine certain witnesses. The trial

judge's determination to the contrary is supported not only by his own notes and the testimony of Mr. Fraser, the transcribing reporter, but also by the testimony of Mr. Al Matthews, deputy public defender, who acted as "legal adviser" (not counsel) for defendant during the trial. (c) Defendant has specified some particular changes in the record which, he says, the trial judge should have allowed. The unimportance of these matters is apparent for, had the proposed changes been allowed, the effect of the record and the result of an appeal would have been in no way affected. (d) Defendant asserts that sarcastic statements of the prosecuting attorney during the trial have been omitted or "smoothed over." There is no claim that defendant objected to these statements or requested the court to admonish the prosecuting attorney and instruct the jury to disregard improper remarks, nor is there any claim that the remarks were so serious that their effect could not have been removed by admonishment. In only one instance was a change made in Mr. Fraser's transcription of statements of the prosecuting attorney. This change was *in the portion of the notes dictated by Mr. Perry* but not typed by his transcriber until after his death. It was requested by the prosecuting attorney. In allowing it the trial judge said, "this is one of the matters that I do particularly recall because of the unusual character of the situation." Even had the correction not been allowed, defendant could not on appeal maintain that the statement amounted to prejudicial misconduct, for it was clearly invited by defendant. (e) Finally, defendant claims that in the transcription of the prosecuting attorney's closing argument "Objectionable, prejudicial matter has been weeded out . . Abusive references to the defendant have vanished." Defendant specifies only two instances of such asserted inaccuracies. He says, "Statements that 'five to life means nothing to Chessman—life means nothing to Chessman' are abandoned in the transcription." Defendant appears to be mistaken; a number of such statements appear in the transcript. And, defendant says, the transcript omits or modifies "gross misstatements as to the law, incurable by instruction, to the effect that life without possibility of parole doesn't mean that at all, and that the jury should and must return the death penalty because otherwise there was imminent danger the defendant again would be loosed by a lax administration of the law to prey upon society because the defendant was a cunning individual who knew the angles." Defendant appears to be mistaken in this

claim also. The transcript contains a great deal of argument in accord with the quoted statements, and the language of the transcript is no more temperate than that quoted.

Defendant is correct in his contention that he is entitled to augmentation of the transcript by inclusion of the *voir dire* examination of jurors and the opening statement of the prosecuting attorney. These are part of the "entire record" (that is, both the "normal" and the "additional" record) which, in substantial compliance with rule 33(a) (2), should be included in the reporter's transcript. Defendant also asks inclusion of a motion "that he be allowed to exercise reasonable freedom of movement within the courtroom . . . and the denial thereof by the trial court." It appears from defendant's discussion of this matter that it will appear in a transcription of the *voir dire* examination of jurors.

Defendant further asks for inclusion in the record of a transcription of what is indicated in the record as a "(Discussion as to subpoenaing witnesses)" and asserts that the transcript does not contain a "discussion between the trial court, counsel and the appellant, wherein it was shown by appellant, and conceded by the deputy district attorney, that an attorney, William Roy Ives, given the opportunity to prepare the case, would appear with or for defendant." Both these "discussions" took place after the cause was called for trial and before a jury was selected. Defendant does not claim that they were heard by prospective jurors. He says that a main point on which he will rely on appeal is that he was not allowed to subpoena defense witnesses. The record before us shows that defendant asked that two witnesses who resided out of the county be subpoenaed and that the trial judge properly refused to order their attendance because defendant's "Affidavit to substantiate necessity for issuance of foreign subpoenas" affirmatively showed that the desired testimony of these witnesses (the Chairman of the Adult Authority and the Classification and Parole Representative at Folsom) would not have been admissible. (See Pen. Code, § 1330.) Defendant does not explain what other witnesses he wished to call or what testimony he expected them to give. It appears that three days before the trial the deputy district attorney, with defendant's consent, gave to a deputy sheriff a list of 20 desired witnesses prepared by defendant and instructed the sheriff to serve subpoenas on the listed persons. Twelve of these people appeared and testified; two were served and their nonappearance is not explained; two others were

the above-mentioned persons who resided out of the county; still another was present in court but did not testify. It further appears that throughout the trial defendant had the services of Mr. Al Mathews, deputy public defender, as "legal adviser" and the services of an investigator for the public defender's office who interviewed 34 witnesses, and subpoenaed some of them, for the defendant.

A record of what was said in the "discussions" could not lead to reversal on the ground of defendant's claims that he was forced to go to trial unprepared because he had not subpoenaed witnesses and was not allowed a continuance to permit Mr. Ives to prepare, because of the following occurrence (shown by a portion of the record which was reported by an official reporter other than Mr. Perry, deceased) : Forty-eight days before the trial began, defendant appeared for plea. He had previously been represented by counsel but at this time he said, "I wish to represent myself." The following colloquy took place:

"THE COURT: Are you a good lawyer?

"THE DEFENDANT CHESSMAN: I think so.

"THE COURT: Few lawyers say they are good.

"THE DEFENDANT CHESSMAN: I think I am a good enough lawyer.

"THE COURT: You don't want to trust it to a lawyer?

"THE DEFENDANT CHESSMAN: I don't want to do it.

"THE COURT: What will probably happen, if we set this case down for trial, you will want a lawyer and then ask for a continuance. If you want to try your own case, there is no way we can tell you not to. You will have to try it or have somebody hired to represent you in plenty of time to try the case at the time it is set.

"THE DEFENDANT CHESSMAN: I understand that.

"THE COURT: Because many times men with past experiences such as you have had—you know the tricks of the trade, and they get a lawyer at the very last minute. You really want to try your own case?

"THE DEFENDANT CHESSMAN: That is correct."

Defendant pleaded, the court set the case for trial, and said, "I want the record to show that we have advised Mr. Chessman that he must be ready for trial on the day that this case is set and that the court will entertain no motion to continue the case, even if you have in the meantime decided to hire a lawyer . . . I have told you why we object to this procedure is because of the advantage which shrewd defend-

ants who have had courtroom experience take to stall the case because of their knowledge if they get a lawyer who isn't prepared, he can successfully get a continuance and it will not be granted in your case.'' The record further shows that defendant repeatedly refused to permit the public defender to represent him.

Defendant urges that he should have been allowed to appear personally in the proceedings which resulted in the present reporter's transcript, and that he should now be allowed to appear personally before the trial judge in support of his position. Since the entry of the judgments of conviction defendant has been lawfully imprisoned awaiting determination of his appeal. He is presently lawfully confined in San Quentin. He was not and is not entitled as a matter of right to go about the state making appearances before courts to present legal arguments. Neither reason, public policy, nor any express provision of law requires defendant's personal presence at proceedings to determine the accuracy of a transcript. From a time before his trial began defendant has repeatedly claimed, as he does now, that in connection with his representation of himself he is entitled to rights and should be accorded privileges greater than those of a defendant who is represented by counsel. The judges of the superior court before whom he appeared carefully and repeatedly explained to him that his rights and privileges as a prisoner could not be enlarged by his decision to represent himself. In the trial court he was repeatedly offered and refused counsel, and he has refused to accept appointment of counsel to represent him before this court because counsel who volunteered to represent him could not agree to his ''condition he can continue in pro. per. with any legal action or stipulation . . . requiring co-signature of Chessman and [counsel].'' In these circumstances he cannot complain that he has been prejudiced by the fact that he has not, since his conviction, been allowed to appear personally in court.

We conclude that defendant has shown no tenable ground for being presently allowed to appear before the superior court and that the circumstances of this appeal, including the death of the reporter Perry, do not entitle defendant to a new trial as a matter of right. Defendant's request that the appeal be dismissed is apparently inadvertent; such action would result in the enforcement of the judgments without affording defendant a review of the merits on appeal on the present or any record.

■ The trial court's determination of the objections to, and its certification of, the transcript, do not constitute an appealable order; the purported appeal therefrom is dismissed. It is ordered that the *voir dire* examination of jurors and the opening statement of the deputy district attorney be transcribed, certified and added to the record before us. Except for the augmentation of the record as above specified, the motions for an order to the superior court to "correct and properly certify record, to order a hearing in the Superior Court relative to this matter, and for the Supreme Court to agree to decide on appeal (or otherwise) certain undecided questions of law relative to the preparation of a reporter's transcript for use on appeal in a capital offense and the applicability of section 953e C.C.P. to criminal cases," and the "Motion to dismiss automatic appeal without determination," are denied.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

In the main, I agree with the basic concept expressed in the dissenting opinion of Mr. Justice Edmonds, but I would not go so far as to hold that in every case where the death penalty is imposed, the death or disability of the court reporter before the completion and certification of the record would justify the granting of a new trial. Should a case be presented where the reporter had transcribed all of his notes with the exception of routine testimony of character witnesses, or other evidence more or less collateral to the main issue, and no serious objection is made to the accuracy of the portion transcribed, I would be disposed to hold that there had been a substantial compliance with the statutes and rules applicable to the preparation of records in cases of this character. Experience of those who have participated in the trial of cases dictates that absolute perfection in the preparation of phonographic records is not to be expected. Some errors may exist in records prepared by the most capable and efficient reporters. In fact, any reproduction of the human voice dependent upon the skill and accuracy of a shorthand reporter may contain some errors. That is why a provision is made for the settlement and certification of a record by the trial judge in the event objection is made to the accuracy of the record certified to by the reporter. But in a case of this character, where some 1,200 pages of the reporter's notes had not been transcribed by him or dictated into a dictaphone, and the tran-

scription of such notes is dependent upon the ability of another reporter to read the same, I cannot agree that a record prepared in such a manner can be said to constitute a substantial compliance with the provisions of the statutes and rules applicable to the preparation of records in cases of this character.

I would, therefore, reverse the judgment and grant defendant a new trial in this case.

EDMONDS, J.—"When upon any plea a judgment of death is rendered, an appeal is automatically taken by the defendant without any action by him or his counsel" (Pen. Code, § 1239, subd. b), and the defendant is entitled to "the entire record of the action." (Rules on Appeal, rule 33, subd. c.) In considering such an appeal, the Constitution directs this court to make "an examination of the entire cause, including the evidence." (Const., art. VI, § 4½.) Under the circumstances shown by Chessman, the constitutional requirement cannot be carried out.

The Rules on Appeal allow the record to be prepared in either of two ways. They provide that "The reporter shall prepare an original and 3 clearly legible typewritten copies of the reporter's transcript . . . and shall append to the original and each copy a certificate that it is correct." (Rule 35, subd. b.) When "completed, the clerk shall deliver one copy to the defendant or his attorney. . . ." Promptly thereafter, the original transcripts shall be delivered to the judge for his approval. After all offered objections have been determined and the corrections, if any, made the judge shall certify that fact. (Rule 35.)

When requested by the appellant, an appeal may be presented upon an agreed or settled statement. Rule 36 reads, in part, as follows: "If a transcription of any part of the oral proceedings cannot be obtained for any reason, the appellant, as soon as the impossibility of obtaining a transcript is discovered, may serve and file an application for permission to prepare a settled statement in place thereof. . . . The judge shall decide the application within 5 days, and, if the showing is sufficient, shall make an order permitting the preparation of a settled statement . . ." ". . . in narrative form of all or such portions of the oral proceedings as . . . [the appellant may deem] material to the determination of the points on appeal. Where necessary for the purposes of accuracy, clarity or convenience, portions of the evidence may be set forth by question and answer, subject to the ap-

proval of the court in settling the statement." (Rule 7, subd. a.)

The document filed as the reporter's transcript in this case is an approximate, but neither an exact nor complete, record of the proceedings before the trial court. It was prepared by a method which complies with neither rule 35 nor rule 36, but is a hybrid of each. According to the transcript of the proceedings at the time the objections made by Chessman to the document prepared by the substitute reporter were heard and determined, the trial judge allowed certain corrections of it. He then approved the document as the best possible substitute for an exact and correct transcript, and one which approximates the requirements of both rules. As appears from his remarks, he knew that a settled statement under rule 36 could be used only upon the request of the appellant, and he treated the transcription only ". ... *as the basis of establishing a transcript on appeal.*" (Emphasis added.)

The substitute reporter has not certified that the transcript is correct. His statement is that 1,200 of the 1,800 pages ". . . constitute a full, true and correct transcript of said shorthand notes of . . . (the deceased reporter) . . . to the best of my ability." However, the rules cast responsibility for the correctness of the transcript upon the reporter. The only certification specified for the judge is that, following a hearing and determination of all objections made to the transcript, it has been corrected in accordance with such determination. But prior to the judge's approval, the reporter must certify that the transcript made by him "is correct." The document prepared by the substitute reporter as the basis for Chessman's appeal does not bear the certificate required by law and the action of the trial judge is no substitute for that missing prerequisite.

Manifestly the rules require the person who prepares the transcript to have primary knowledge that it is an accurate statement of the evidence presented during the trial, and to so state in writing. Such a certificate cannot be made by one who was not present at the trial and has no personal knowledge of what transpired. The substitute reporter has not stated, and could not certify, that his transcription of the notes taken by the deceased reporter is correct, and no one can vouch for the document as an accurate and complete record of the oral proceedings on the trial.

Problems relating to the proper authentication of the record

on appeal are not novel. It has long been the rule that when the trial court fails to comply with the statutory provisions requiring authentication of the bill of exceptions or the transcript of the record, such papers may not be considered upon appeal. (*Malony* v. *Adsit*, 175 U.S. 281 [20 S.Ct. 115, 44 L.Ed. 163]; *Campbell* v. *Reed*, 2 Wall. (69 U.S.) 198 [17 L.Ed. 779].) In those jurisdictions which require a seal for authentication of the record, upon the absence of the seal, courts have refused to hear the appeal. (*Wells* v. *Long*, 6 Ark. 252; *Cowhick* v. *Gunn*, 2 Scam. (3 Ill.) 417; *No. 4 Fidelity Bldg. & Sav. Union* v. *Byrd*, 154 Ind. 47 [55 N.E. 867]; *Jones* v. *Frost*, 42 Ind. 543.) In *Oxford & C.L.R. Co.* v. *Union Bank*, 153 F. 723 [82 C.C.A. 609], it was held that the congressional act requiring a bill of exceptions to be authenticated by the signature of the trial judge must be strictly complied with, and the mere recital in the record that the judge signed the bill of exceptions is not sufficient.

Nor is the omission of the judge to sign the bill of exceptions supplied by his signature to an order allowing and settling the bill. (*Dalton* v. *Hazelet*, 182 F. 561 [105 C.C.A. 99].) A certificate to the effect that the trial judge signed the bill of exceptions or his indorsement showing presentation of the bill to him cannot cure the omission of the signature on the bill of exceptions. (*Cooper* v. *Maloney*, 162 Mo. 684 [63 S.W. 372].)

Following these principles, the courts of this state have repeatedly held that a record which lacks the authentication required by law may not be considered as the basis for an appeal. (*People* v. *Armstrong*, 44 Cal. 326; *People* v. *Ferguson*, 34 Cal. 309; *Salinas* v. *Riverside Finance Co.*, 126 Cal. App. 675 [14 P.2d 1025]; *People* v. *Lee*, 97 Cal.App. 321 [275 P. 815]; *Lewis* v. *Lapique*, 26 Cal.App. 448 [147 P. 221]; *People* v. *Schultz*, 14 Cal.App. 106 [111 P. 271].) In *People* v. *Brecker*, 20 Cal.App. 205 [127 P. 666], the reporter annexed to the transcript a certificate that it was correct. However, the court declined to consider the record for the reason that it did not include the statutory requirement of certification under oath. The trial judge's certificate was "held to be a mere nullity, so far as any effect it may have as an authentication of the record on appeal, where . . . the phonographic reporter's certificate is wanting in one of the most vital of the requisites of a proper or legal authentication."

Because of the responsibility of the appellant in a civil case to present a properly prepared transcript, usually the

appeal will be dismissed when the record has been improperly prepared. However, different considerations apply to the appeal of a defendant upon whom the death penalty has been imposed. Most courts passing upon the question of an appellant's rights have declared that, in the interests of justice, a new trial should be granted a defendant in a criminal case when the record has not been authenticated as required by law. (*State* v. *Bess,* 31 La.Ann. 191; *State* v. *McCarver,* 113 Mo. 602 [20 S.W. 1058]; *State* v. *Reed,* 67 Mo. 36; *Elliott* v. *State,* 5 Okla.Crim. 63 [113 P. 213], new trial should be granted in the same manner as the law provides for new trial on the ground of newly discovered evidence; *Bailey* v. *United States,* 3 Okla.Crim. 175 [104 P. 917, 25 L.R.A.N.S. 860]; *Burden* v. *State,* 70 Tex.Crim. 349 [156 S.W. 1196]; *Johnson* v. *State,* 16 Tex.App. 372; *Trammell* v. *State,* 1 Tex.App. 121; *Richardson* v. *State,* 15 Wyo. 465 [89 P. 1027, 12 Ann.Cas. 1048].) In *Tegler* v. *State,* 3 Okla.Crim. 595 [107 P. 949, 139 Am.St.Rep. 976], the trial judge died before he could settle and sign a case-made. A statute authorizing the trial judge's successor in office to sign the case-made had not become effective, and it was held that the defendant was entitled to a new trial.

In this state, there are two statutory grounds requiring a new trial. Not only is the appeal upon a properly authenticated record a matter of inherent right and justice, but section 1239 of the Penal Code directs this court to review the proceedings in which the death penalty has been imposed. For that purpose "the entire record of the action" must be prepared. But in the present case the transcript, to which the defendant is entitled as a matter of right (Rules on Appeal, rule 33, subd. c) does not comply with the requirements of law as to certification.

The law makes no provision for the hearing of an appeal upon a transcript which is the most nearly correct one obtainable under the circumstances, and no requirement has been laid upon a defendant to show wherein he would be prejudiced upon an appeal by a record which the attorney general only terms "substantially complete." Article VI, section 4½ of the California Constitution provides that no new trial shall be granted ". . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In the cases of *People* v. *Connors,* 77 Cal.App. 438 [246 P. 1072], and *People* v. *Adams,* 76 Cal.App. 178 [244 P.

106], the court said that in providing for the affirmance of a judgment unless the errors complained of have resulted in a miscarriage of justice, the people did not intend that this authorization should be used to cover up or excuse every disregard of any of the just rights of a citizen in the trial of a criminal prosecution.

It is pursuant to the constitutional mandate that the court shall examine "the entire cause, including the evidence," that the Rules on Appeal require an "entire record of the action" to be prepared (Rule 33, subd. c.) In the absence of a complete and correct record, how can this court review all of the evidence?

It is unreasonable to place upon a defendant sentenced to death the burden of showing wherein omissions and inaccuracies in the record vitally affect his rights. This is particularly true of the evidence in the present case relating to the question of identification. Chessman asserts that portions of the cross-examination of three witnesses who identified him as the robber are not included in the transcript. He also claims that all of the cross-examination of another witness has been omitted. It may be that if the missing testimony were presented upon the appeal, Chessman's guilt would not be so clearly established as to enable this court to say that such errors as may be relied upon as grounds for reversal did not result in a miscarriage of justice. When the case is a close one, errors which would not otherwise be held prejudicial may justify a new trial. (*People* v. *Ford,* 89 Cal.App.2d 467, 471 [200 P.2d 867] ; *People* v. *Hale,* 82 Cal.App.2d 827, 834 [187 P.2d 121] ; *People* v. *Lynch,* 60 Cal.App.2d 133, 145 [140 P.2d 418] ; *People* v. *Angelopoulos,* 30 Cal.App.2d 538, 549 [86 P.2d 873].) However, upon an incomplete record this court will not be in a position to consider the evidence and, with any certainty, deny relief to the appellant under this well established rule.

For these reasons, I would reverse the judgment and remand the cause for a new trial.

Appellant's petition for a rehearing was denied June 12, 1950. Edmonds, J., and Carter, J., voted for a rehearing.