## CHESSMAN v. PEOPLE et al.
### No. 13451.

United States Court of Appeals
Ninth Circuit.

May 28, 1953.

Rehearing Denied June 30, 1953.

Caryl Chessman, in pro. per.

Edmund G. Brown, Atty. Gen., and Clarence A. Linn, Asst. Atty. Gen., of Cal., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from an order of the United States District Court for the Northern District of California, Southern Division, Louis E. Goodman, Judge, denying a petition for a writ of habeas corpus.

The question presented is whether the district court erred in denying the application for the writ upon the ground that the state courts had adequately considered and disposed of the contentions made in the application.

Caryl Chessman was convicted in the California courts on 18 felony counts, including two for which the death penalty was imposed. The judgments were affirmed on appeal. People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001. Simultaneously with the appeal, a petition for a writ of habeas corpus was filed with the state court. This petition was denied by a memorandum order and the United States Supreme Court denied certiorari, Chessman v. California, 343 U.S. 915, 72 S.Ct. 650.

Chessman's petition is extremely lengthy and cites many instances in which he claims he was deprived of his rights under the United States Constitution. These may be summarized as follows: (1) that Chessman was forced to go to trial unprepared; (2) that confessions obtained by force and intimidation and promises of partial immunity were used in evidence against him; (3) that said confessions were treated as "admissions" by the court and prosecution with the result that the jury was authorized to base a verdict of guilty upon these involuntary statements; (4) that the trial resulting in Chessman's conviction was unfair; (5) that § 209 of the California Penal Code, under which the death penalties were imposed, is unconstitutional as applied to Chessman; (6) that petitioner was placed in double jeopardy; and (7) that due to extrinsic fraud practiced by the prosecuting attorney and the trial judge the transcript of record forwarded upon appeal to the state supreme court was incomplete and further that Chessman was not permitted to show that important parts of the proceedings were missing or were incorrectly recorded.

█ (1) Chessman's contention that he was forced to go to trial unprepared was adequately disposed of by the state courts.

Chessman contends that he was forced to go to trial unprepared, that he had no attorney and that prison rules did not permit him access to law books or a chance to interview witnesses. This point was adequately considered and disposed of by the California Supreme Court in its opinion in Chessman's appeal, People v. Chessman, 38 Cal.2d 166, 172–174, 238 P.2d 1001. We have examined the determination of the California court and find no fault therein. We therefore accept the State court's determination. Brown v. Allen, 344 U.S. 443, 507–508, 73 S.Ct. 397, 437. (Opinion of Justice Frankfurter).

(2) Chessman's contention that confessions obtained by force and intimidation and promises of partial immunity were used in evidence against him was adequately disposed of by the state courts.

█ As is shown by the opinion of the California Supreme Court in Chessman's appeal, People v. Chessman, supra, 38 Cal. 2d at pages 178–182, 238 P.2d 1001, the trial court in the first instance and the jury both decided the issue of the voluntariness of the confession against Chessman. While Justice Frankfurter stated that "the question whether established primary facts underlying a confession prove that the confession was coerced or voluntary cannot rest on the State decision" (citing Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; Stroble v. California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872), Brown v. Allen, 344 U.S. 443, 507, 73 S.Ct. 397, 437, 446, where, as here, the evidence as to these primary facts is conflicting the determination of the triers of fact will be accepted unless "it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process." Lisenba v. People of State of California, 314 U.S. 219, 238, 62 S.Ct. 280, 291, 86 L.Ed. 166. The same procedures for determining the voluntariness of the confession were used in this case as were used in the Lisenba case, hence there is nothing for the federal court to consider.

(3) Chessman's contention that the confessions were treated as admissions with the result that the jury was authorized to base a verdict of guilty upon involuntary statements is wholly without merit.

As is shown above, the statements or confessions of Chessman were found to

be voluntary and that finding is controlling here. Hence it makes no difference whether the statements were labeled "confessions" or "admissions". On this issue Chessman has failed to make out a prima facie case. Brown v. Allen, supra, 344 U.S. at page 502, 73 S.Ct. 397.

(4) Chessman's contention that the trial resulting in his conviction was unfair was adequately disposed of by the state court.

Chessman's contention that the trial was unfair is based upon the following allegations: that 18 felony counts were consolidated for one trial, that he was required to remain at the counsel table while interviewing witnesses, that he was denied a daily transcript of record while the prosecutor was able to obtain one, and that the court refused to allow an attorney as well as Chessman to argue to the jury. These contentions were all considered by the state supreme court, People v. Chessman, supra (consolidation of counts, 38 Cal.2d at page 175, 238 P.2d 1006, requirement that Chessman remain at counsel table, 38 Cal.2d at page 176, 238 P.2d at page 1007, denial of Chessman's motion for daily transcript, 38 Cal.2d at pages 176–177, 238 P.2d 1007–1008, and refusal to allow an attorney as well as Chessman to argue to the jury, 38 Cal.2d at pages 188–189, 238 P.2d at pages 1014–1015.

■ (5) Chessman's contention that § 209 of the California Penal Code is unconstitutional as applied to him is without merit.

Chessman was charged with and convicted of kidnapping for the purpose of robbery in four counts. Where the kidnappee suffers bodily harm, the penalty may be death under Calif.Pen.Code, § 209. Chessman has been found guilty of holding up couples in parked cars, forcing the woman to go a short distance away from the car, forcefully committing an act of a sexual nature, and robbing the woman while she was removed from the car. The California Supreme Court, in a companion case involving his co-defendant, decided that in such circumstances § 209 was applicable, People v. Knowles, 35 Cal.2d 175, 217 P. 2d 1. This is a matter of statutory con-

struction and presents no constitutional issue.

■ (6) Chessman's contention that he was placed in double jeopardy is without merit.

It is true that Chessman was convicted of the crime of rape when the offense was an integral part of the crime of kidnapping and imposing bodily harm. It is also true that Calif.Pen.Code § 654 forbids punishing one separately for acts which are a part of another crime for which that person is also being punished. However, as is pointed out by the California Supreme Court, "since defendant is subject to two validly imposed death sentences, no purpose would be served by reversal of other judgments of conviction." People v. Chessman, 38 Cal.2d at page 193, 238 P. 2d at page 1017.

(7) Chessman's contention that due to extrinsic fraud by the trial judge and the prosecutor, the transcript of record forwarded upon appeal to the state supreme court was incomplete and that he was not permitted to show that important parts of the proceeding were missing or incorrectly recorded presents no issue upon which he is entitled to a hearing.

■ Chessman's contention that the transcript of record on appeal was incomplete and inaccurate is based upon the following allegations: That it was prepared by a method unknown to the law (a question of state law, determined adversely to him, Id.); and that extrinsic fraud was employed both in the preparation of the record and in getting the California Supreme Court to accept it for use on appeal. This latter charge is the only one which Chessman can urge in the federal courts.

After the judgment of conviction was entered, the court proceeded without Chessman's participating to prepare the record on appeal. The reporter of the trial proceedings had died without transcribing his shorthand notes and the transcript was made up by another reporter aided by other testimony. He contends that collusion between the trial judge, the prosecuting attorney and the transcribing reporter prevented a true record—one which would

have shown the truth of his other allegations—from being presented to the California Supreme Court. He claims that the Fourteenth Amendment was violated in that he was deprived of his right of personal participation in the proceeding in which the record was settled, and that the prosecuting attorney, who testified in the preparation of the record, perjured himself.

 There is no merit in the contention that the due process provisions of the Fourteenth Amendment were violated. The Constitution gives no right to appear in person or by counsel on a criminal appeal. Whether to grant an appeal, and the terms upon which it will be granted are purely matters of local law over which federal courts have no control. See Andrews v. Swartz, 156 U.S. 272, 274–275, 15 S.Ct. 389, 391, 39 L.Ed. 422, where the Court said:

"The statute of New Jersey entitled 'An act regulating proceedings in criminal cases,' approved March 27, 1874 (Revision [of 1877], p. 266), which declares that writs of error in criminal cases punishable with death shall be considered writs of grace, and not writs of right (Id. p. 283), was brought forward from an act passed March 6, 1795. [Laws of New Jersey] (Revision 1821, pp. 184, 186, § 13).

"The contention of appellant is that such a statute is in violation of the constitution of the United States. If it were necessary, upon this appeal, to consider that question, we would only repeat what was said in McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913 [38 L.Ed. 867]: 'An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal. A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law, and is not now, a necessary element of due process of law. It is wholly within the discretion of the state to allow or not to allow such a review.' 'It is therefore clear that the right of appeal may be accorded by the state to the accused upon such terms as, in its wisdom, may be proper;' and 'whether an appeal should be allowed, and, if so, under what circumstances or on what conditions, are matters for each state to determine for itself.'"

And that there can be no denial of due process in the procedure used to settle the record on appeal, see Dowdell v. United States, 221 U.S. 325, 328–329, 31 S.Ct. 590, 55 L.Ed. 753.

The judgment is affirmed.