Caryl **CHESSMAN**, Appellant,

v.

**Harley O. TEETS**, Warden, California State Prison, San Quentin, California, Appellee.

No. 14621.

United States Court of Appeals Ninth Circuit.

April 7, 1955.

Rehearing Denied May 6, 1955.

See also, Cal., 279 P.2d 24.

Jerome A. Duffy, Berwyn A. Rice, San Rafael, Cal., for appellant.

Edmund G. Brown, Atty. Gen., of California, Clarence Linn, Deputy Atty. Gen., of California, for appellee.

Before DENMAN, Chief Judge, and STEPHENS, HEALY, BONE, ORR, POPE, FEE and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

Chessman appeals from an order of the District Court denying his application for a writ of habeas corpus. The record [1] shows that among convictions on seventeen counts, he was convicted on two counts of an information charging

1. It was stipulated that the court could take judicial notice of all the proceedings, State or Federal, in which Chessman was a party, which concerned the relief he from time to time sought to defeat his death sentence.

him with the kidnapping of two young women for the purpose of robbery with bodily harm on which the jury found he should suffer the death penalty. The kidnappings and robberies were accompanied by acts of sexual perversion which Chessman compelled the women to commit. The record of his trial shows that on a third charge of kidnapping and infliction of bodily harm the jury found that he should be imprisoned for life without possibility of parole, a fact his various pleadings carefully avoid mentioning for reasons later apparent.

The gravamen of his application is that he was denied due process by the State in that the trial Court, in his prosecution for kidnapping with bodily harm, instructed the jury that it must render a verdict for the death penalty if they found him guilty on these charges, whereas the jury had the option not to fix the death penalty[2] and that the judge stated to the jury: "This defendant is one of the worst criminals I have had in my court."

These errors, he contends, he was unable to present on the mandatory appeal to the California Supreme Court, because the reporter of the trial died before he had transcribed the court's instructions and the comment and, by a conspiracy between the prosecuting attorney and another reporter who transcribed the shorthand record, the instruction and comment requiring the death penalty were omitted from the record on appeal. The pertinent matter here is that the omission of the alleged clearly wrongful death instruction and the judge's statements to the jury are the only wrongs specified to have been done him by the alleged conspiracy. The burden of proof on a charge of such a conspiracy is not only that it existed but that complainant was harmed thereby. Cf. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L. Ed. 674.

The many proceedings before us show Chessman to be a person of extraordinary ability, with experience in criminal procedure since 1941 in four prior cases, three charging armed robbery, in which he was convicted, three by plea of guilty and another after trial. His voluminous citations of cases supporting his various contentions are worthy of an experienced criminal practioner.

It is apparent that, even without such intelligence, ability and long criminal trial experience, if such a wrongful instruction and court comment had been given it must have stood out in his mind like the "sore thumb" of colloquial speech. More striking is the fact that Chessman claimed in the California Supreme Court that the *prosecuting attorney* had stated to the jury " 'that life without possibility of parole doesn't mean that at all, and that the jury should and must return the death penalty because otherwise there was imminent danger the defendant again would be loosed by a lax administration of the law to prey upon society because the defendant was a cunning individual who knew the angles.' " People v. Chessman, 35 Cal.2d 455, 465, 218 P.2d 769, 774, 19 A.L.R.2d 1084. It is inconceivable that he then thought that the *court* had given such an instruction and made such comment to the jury.

For purposes of this decision we may assume the remote likelihood that the claims of the obviously invalid death instruction and comment to the jury are not perjured afterthoughts, despite Chessman's careful avoidance of the fact that the jury must have disobeyed the instruction in not giving the death penalty on the third count, but were in Chessman's mind in 1948 on the appeal from his conviction. If this be so, it is apparent that he husbanded these con-

---

2. Cal.Pen.Code, § 209: "Every person who * * * holds or detains * * * [another person] to commit * * * robbery * * * shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person * * * subjected to such kidnaping suffers * * * bodily harm * * * *."

tentions through ten habeas corpus proceedings in the State and Federal courts [3] till their first appearance in a petition for the writ in the California Supreme Court, filed six years later in 1954.

■ Primary, however, is the fact that the State of California gave Chessman ample opportunity in the case in which he was convicted to urge the omissions from the record of his trial of the death instruction and the adverse comment of the judge which appellant now claims were made. The Superior Court which tried Chessman entertained his various contentions for the correction of the record upon its settlement for his appeal and some 11 months later the California Supreme Court considered Chessman's various contentions to augment the record.[4] In neither proceeding was this alleged missing instruction or comment called to the attention of the state courts. Since he then could have added the claimed wrongful instruction and comment he was deprived of no substantial right by not being allowed to attend the preparation of the record.

■ Having been given every opportunity by the state before considering the automatic appeal in the case in chief to point out the alleged omissions, he cannot now urge the matters he previously failed to raise. The Supreme Court, in a similar state case where the convicted man had the right to raise the contention that he had been illegally sentenced and he failed to do so, held that the state had accorded him due process. Ex parte Spencer, 228 U.S. 652, 661, 33 S.Ct. 709, 57 L.Ed. 1010, accord, Brown v. Allen, 344 U.S. 443, 486, 73 S.Ct. 397, 97 L.Ed. 469; Burall v. Johnson, 9 Cir., 134 F.2d 614, certiorari denied 319 U.S. 768, 63 S.Ct. 1327, 87 L.Ed. 1717. Chessman also contends that he was denied effective representation of counsel. He initially had counsel whom he relieved on March 12, 1948, the day he entered his pleas of not guilty. Thereafter he litigated until the instant proceedings in propria persona, repeatedly refusing proffered counsel at his criminal trial and in subsequent proceedings. On one of the occasions when he refused proffered counsel he stated to the court: "I think I am a good enough lawyer." The court then asked him, "You don't want to trust it to a lawyer?" Chessman responded: "I don't want to do it." Chessman finally agreed to allow an attorney to act merely as a legal adviser. Nowhere in his application does he allege that he demanded counsel after his persistent refusals of such aid. Chessman waived his right to counsel and is now precluded from urging denial of his constitutional right upon this ground.

The order of the district court is affirmed.

HEALY, Circuit Judge, concurs in the result.

3. In 1950 and 1951 petitions for habeas corpus were submitted to the California Supreme Court and the alleged instruction and comment were not mentioned. Four petitions to the Superior Court for Marin County, State of California, have been made by applicant without any reference to the omissions now pressed upon us. Prior to Chessman's instant application four were made to the United States District Court without mention of the alleged omissions.

4. People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, 19 A.L.R.2d 1084, certiorari denied 340 U.S. 840, 71 S.Ct. 29, 95 L. Ed. 616. As an example of the particularity with which Chessman examined the transcript the following errors among many were urged in "Defendant and Appellant's Revised List of Inaccuracies and Omissions in the Record." "Page 421, line 21: the word the Defendant used was 'dorsi' not 'doral' * * *" "Page 726, line 9: the word 'not' should be deleted. Line 23: substitute 'the' for 'your.'" "Page 1280, following the statement by the court on page 1279, line 26, and 1280, line 1 and 2, the defendant's answer is omitted: 'No, I did not.'"