**Caryl CHESSMAN, Appellant,**

v.

**Harley O. TEETS, Warden, California State Prison, San Quentin, California, Appellee.**

No. 15092.

United States Court of Appeals
Ninth Circuit.

Oct. 18, 1956.

Rehearing Denied Nov. 20, 1956.

Opinions on Denial of Rehearing
Nov. 27 and Nov. 28, 1956.

Denman, Chief Judge, dissented.

Denman, Chief Judge, dissented from denial of petition.

See also 9 Cir., 219 F.2d 162; 44 Cal.2d 1, 279 P.2d 24.

George T. Davis, San Francisco, Cal., Rosalie S. Asher, Sacramento, Cal., Caryl Chessman, in pro. per., for appellant.

Edmund G. Brown, Atty. Gen., Clarence A. Linn, Asst. Atty. Gen., Arlo E. Smith, Deputy Atty. Gen., State of Cal., for appellee.

Before DENMAN, Chief Judge, and LEMMON and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

This is an appeal from an order denying Caryl Chessman's eleventh application for a writ of habeas corpus.

He was convicted on May 21, 1948, of seventeen felonies.[1] Two sentences of death and fifteen sentences of imprisonment were entered on June 25, 1948. Following denial of his motion for a new trial, Chessman appealed to the California supreme court.

While this appeal was pending, appellant instituted several proceedings challenging the accuracy and completeness of the transcript on appeal and the validity of the proceedings in which it had been settled.[2] Most of these proceedings revolved around the fact that after the trial, the court reporter died before completing his transcript of the testimony. The transcript was completed by another court reporter, and certified after a hearing whch appellant was not permitted to attend.

For the most part, appellant was unsuccessful in these early efforts to invalidate or augment the transcript. He did, however, obtain inclusion in the transcript of the voir dire examination of the jurors and the opening statement of the prosecuting attorney. People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, 19 A.L.R.2d 1084, certiorari denied 340 U.S. 840, 71 S.Ct. 29, 95 L.Ed. 616.

The judgments and order were affirmed on the merits by the California supreme court on December 18, 1951. People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001, certiorari denied 343 U.S. 915, 72 S.Ct. 650, 96 L.Ed. 1330, petition for rehearing denied 343 U.S. 937, 72 S.Ct. 773, 96 L.Ed. 1344.

Since then, and prior to the filing of the instant application, Chessman unsuccessfully prosecuted several proceedings in state and federal courts in an effort to obtain release from custody, or to gain

---

1. Auto theft, armed robbery, kidnaping for the purpose of robbery with infliction of bodily harm, attempted rape, and forcible acts of sexual perversion. On two of the convictions, the jury found that Chessman should suffer the death penalty.

2. Writ of prohibition denied. Chessman v. Superior Court, Crim. 4950 (Minute entry, California Supreme Court) November 22, 1948. Writ of habeas corpus denied by district court on March 17, 1950, and application for certificate of probable cause denied by a judge of this court on May 8, 1950. Writ of habeas corpus denied. Chessman v. Calif. & Duffy, Crim. 5110 (Minute entry, California Supreme Court) June 12, 1950. Motion to augment, correct, and properly certify the record granted in part and denied in part. People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, certiorari denied 340 U.S. 840, 71 S.Ct. 29, 95 L. Ed. 616, decided May 19, 1950. Writ of habeas corpus denied by district court on December 4, 1950, and application for certificate of probable cause denied by a judge of this court on March 10, 1951. Chessman v. Duffy, Misc. 202, certiorari denied 341 U.S. 929, 71 S.Ct. 800, 95 L.Ed. 1359. Miscellaneous motions denied. Chessman v. California and Duffy, Crim. 5217 (Minute entry, California Supreme Court), decided January 15, 1952. Writ of habeas corpus denied by

a new trial.[3] Execution has several times been stayed to enable Chessman to pursue these remedies.

The application for a writ of habeas corpus now before us was filed on December 30, 1954.[4] In it, Chessman alleged that the transcript on appeal had been fraudulently prepared, as a result of which erroneous and prejudicial instructions and comments to the jury had been omitted from the transcript. He also alleged that he had not been afforded effective representation of counsel in the matter of settling the transcript, and had been deprived of the right to be present at the hearing on the settlement of the transcript.[5]

On January 4, 1955, the district court, without a hearing, summarily denied the application as repetitious and completely without merit. In re Chessman, D.C., 128 F.Supp. 600. A certificate of probable cause was obtained from a judge of this court. In re Chessman, 9 Cir., 219 F.2d 162. On appeal, however, we affirmed. Chessman v. Teets, 9 Cir., 221 F.2d 276. The United States Supreme Court granted certiorari, reversed the judgment, and remanded the case to the district court for a hearing.[6]

Pursuant to the mandate of the Supreme Court, a writ of habeas corpus was issued on November 30, 1955, returnable on December 8, 1955. On the latter date, the case was set for trial on January 9, 1956, but was later continued to January 16, 1956. The hearing consumed seven and a fraction days, and was concluded on January 25, 1956.

On January 31, 1956, an opinion, findings of fact, and conclusions of law were entered, to the effect that appellant had failed to sustain the allegations of his application. Judgment discharging the writ was accordingly entered on that day. Chessman v. Teets, D.C., 138 F. Supp. 761. An application for a certificate of probable cause was granted by a judge of this court, thereby sanctioning this appeal.

The only allegation of the application regarding which the Supreme Court, in reversing and remanding, indicated concern was that which charged that the transcript on appeal had been fraudulently prepared. The district court found that there was no factual basis for this allegation. It affirmatively found that the substitute reporter was exceptionally and especially competent to transcribe the deceased reporter's notes; that he did so with fairness and competency; and that a fair and correct record was certified. It also found that no erroneous instructions or comments had been

district court on November 6, 1951. Chessman v. Duffy (D.C.Civ. 30965).

3. Chessman v. People, 9 Cir., 1953, 205 F. 2d 128, certiorari denied 346 U.S. 916, 74 S.Ct. 278, 98 L.Ed. 412; Chessman v. Teets, Crim. 5632 (Minute entry, California Supreme Court) July 21, 1954; People v. Superior Court, Cal.App., 273 P.2d 936; In re Chessman, 43 Cal.2d 391, 408, 274 P.2d 645, certiorari denied Chessman v. People of State of Cal., 348 U.S. 864, 75 S.Ct. 85, 99 L.Ed. 681; In re Chessman, 44 Cal.2d 1, 279 P.2d 24.

4. This application was filed shortly after the U. S. Supreme Court had denied certiorari to the supreme court of California, "without prejudice to an application for a writ of habeas corpus in an appropriate United States District Court." Chessman v. People of State of Cal., 348 U.S. 864, 75 S.Ct. 85, 99 L.Ed. 681, 75 S.Ct. 85.

5. A fourth ground set out in this application—that he had been deprived of effective representation by counsel prior to and throughout the trial—was not urged at the hearing or on this appeal.

6. Chessman v. Teets, 350 U.S. 3, 4, 76 S.Ct. 34, 35, 100 L.Ed. 4. Observing that, on the record, there was no denial of appellant's allegations as to fraud, the Supreme Court said:
"* * * The charges of fraud as such set forth a denial of due process of law in violation of the Fourteenth Amendment. See Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791. Without intimating any opinion regarding the validity of the claim, we hold that in the circumstances disclosed by the record before us the application should not have been summarily dismissed.
* * *"

omitted from the transcript, as no such instructions had been given or comments made.

On appeal, Chessman does not directly challenge any of these findings. He contends, however, that in the proceedings under review, the district court denied him "that type of full and fair hearing ordered by the Supreme Court."

In support of this contention, appellant advances seven specific objections as to the conduct of the habeas corpus hearing. The first of these is that the trial court erroneously refused to permit the taking of depositions of material witnesses, or to order their production.

■ The persons whom appellant desired to subpoena, or to have their deposition taken, reside in the Los Angeles area. Hence, the trial court, which is the district court for the Northern District of California, Southern Division, was without authority to subpoena these persons to appear at the trial.[7]

No order was required to enable appellant to take the depositions of the named Los Angeles residents.[8]

On January 19, after the trial had been in progress four days, appellant moved for a two-week continuance, so that the depositions of eleven Los Angeles residents could be taken. The affidavit supporting this motion outlined the character of the testimony which each of these witnesses would give.[9] On January 24, 1956, one day before the close of the trial, appellant moved for a

two-week continuance. He desired the continuance so that he might endeavor to arrange for the appearance of some of the Los Angeles witnesses, or find additional witnesses. These motions were denied.

Some of the proffered testimony was patently hearsay, some was cumulative, and some was of doubtful relevancy. No sufficient showing was made as to why any admissible and necessary testimony could not have been obtained by deposition prior to the trial. Appellant was aided by counsel throughout, and had from November 30, 1955, to January 16, 1956, to prepare his case. Despite the denial of these motions, appellant produced seven witnesses and offered twenty-two exhibits, twenty of which were received in evidence.

■ We hold that the trial court did not abuse its discretion in denying these motions for a continuance made during the course of the trial.[10]

Concerning the conduct of the habeas corpus hearing, appellant next argues that the district court deprived him of a full and fair hearing by too narrowly restricting, or excluding, the evidence which he sought to produce. Four instances are relied upon in support of this contention:

*First.* The first such instance has to do with the question of whether the notes of the deceased court reporter were decipherable with a reasonable degree of accuracy. Appellant calls attention to some general statements of the court to

**7.** Fed.Rules Civ.Proc. Rule 45(e) (1), 28 U.S.C.A. Vincennes Steel Corp. v. Miller, 5 Cir., 94 F.2d 347. Counsel for appellant, during the argument of the motion, told the trial court: "We are of course aware of the fact that the process of this court by subpoena does not extend beyond a hundred miles and that we cannot bring them here under subpoena."

**8.** 28 U.S.C.A. § 2246; Fed.Rules Civ.Proc. Rule 26, 28 U.S.C.A.

**9.** Two of them would testify that they were present in the courtroom at the original trial and heard the judge give the instruction and make the comment

which appellant states were omitted from the transcript. Three (including one who would be asked to bring hospital records) would give testimony bearing upon the character and fitness of the substitute reporter. Four would testify, as court reporters, that the deceased reporter's notes were not decipherable. One would testify that the trial judge told him that appellant would be brought to court when the transcript was settled. One would be asked to bring microfilmed copies of the records in connection with the negotiations for the services of the substitute reporter.

**10.** See United States v. Pacific Fruit & Produce Co., 9 Cir., 138 F.2d 367.

the effect that it would not undertake to test the ability of the substitute reporter, or the accuracy of the questioned transcript.

■ General statements of this kind, unassociated with specific rulings excluding proffered evidence, present no question for review.

The only specific exclusion of testimony to which appellant calls attention relates to the court's refusal to require the substitute reporter to transcribe, from the witness stand, a particular page of the deceased reporter's notes. The witness stated that, because of the intervening years since he worked on the matter, he would need time to study the notes before attempting a transcription.

■ The court offered to have the witness do this overnight, or in an adjoining room while the trial was in progress. These were reasonable alternatives to appellant's proposal. Appellant rejected the suggestion for overnight study, and failed to avail himself of the suggestion that the study be made in an adjoining room. It follows that appellant is now in no position to complain because such a test was not made.

■ *Second*. Counsel for appellant asked the deputy district attorney who tried the original case whether the trial judge had told the witness that the transcript would be delivered to Chessman "in court." Objection to the question was sustained on the ground that it was immaterial.

The sustaining of this objection, if erroneous, was not prejudicial. Counsel for appellant got his answer to the question later in the trial, when the same witness testified that he had no recollection of such a statement by the trial judge. Still later in the trial, the trial judge testified that he had not made such a statement to the deputy district attorney.

*Third*. In the application for a writ of habeas corpus, it is alleged that the asserted fraud in preparing and certifying the transcript resulted in the omission of an erroneous instruction and an improper comment to the jury. Appellant now argues that, at the habeas corpus hearing, the court improperly limited to these two matters the testimony as to omissions and inaccuracies.

■ The court did make a general statement to the effect that the only omissions to be considered were those alleged in the application. Actually, however, the testimony was not so limited. Appellant was permitted to testify as to numerous other asserted omissions and inaccuracies. In any event, the objection here raised presents nothing for our consideration, since appellant refers to no specific instance in which testimony of this character was offered and rejected. We do not reach the question of whether the court's general statement correctly defined the scope of admissible testimony.

*Fourth*. It was appellant's contention throughout that the substitute reporter had misrepresented his ability to transcribe the notes of the deceased reporter. This contention was based upon the allegation that, because of long-continued excessive use of alcoholic beverages, the substitute reporter was mentally and physically incompetent to transcribe the notes.

In order to prove this allegation, appellant, on January 9, 1956, applied for an order requiring the immediate production of the records of the Los Angeles police department pertaining to the substitute reporter and the latter's wife. In the same application, an order was requested requiring the supervisor of records of the Los Angeles County General Hospital to produce hospital records coving the substitute reporter's alleged hospitalization in August, 1953, for delirium tremens and attempted suicide. Similar requests were made in appellant's witness list and application for an order authorizing issuance of subpoenas, filed the same day.

On January 24, 1956, the day before the end of the habeas corpus hearing, counsel for appellant orally moved for an order requiring that Federal Bureau of

Investigation file No. 4146311 and California Criminal Identification file No. 559845 be produced and made a part of the record. It was stated to the court that these files related to the arrest record of the substitute reporter. All of these applications and motions were denied.

■ The arrest records, as distinguished from conviction records, would not be competent evidence of intoxication. This is likewise true of the F. B. I. and C. C. I. records. The hospital records pertaining to an illness in August, 1953, would not be relevant on the question of the substitute reporter's fitness in the last six months of 1950, when he prepared the transcript in question. In most, if not all, cases, the custodians of these documents resided in Los Angeles. The court had no authority to order the custodians to produce these records in San Francisco. Merchant Bank of N. Y. v. Grove Silk Co., D.C., 11 F.R.D. 439.

■ This was not an application for an order requiring a party to the action to produce documents.[11] If the purpose was to discover evidence, no court order was necessary, unless required to fix a convenient place of examination.[12]

■ For the reasons indicated, the court did not err in denying these applications and requests.

■ Upon consideration of the four specific instances which appellant presents, and which have just been discussed, we conclude that the court did not deprive appellant of a full and fair hearing by too narrowly restricting, or excluding, the evidence which he sought to produce.

Returning to the general question of whether the district court denied appellant the kind of hearing ordered by the Supreme Court, appellant next argues that he was not allowed adequate time

11. See Fed.Rules Civ.Proc. Rule 34, 28 U.S.C.A.

12. Fed.Rules Civ.Proc. Rule 45(d), 28 U.S.C.A.

13. Counsel stated: " * * * I must re-

and opportunity to prepare for the hearing. He refers specifically to the lack of privacy and the time and place restrictions imposed by prison officials, which interfered with conferences with his counsel and investigator.

It would not be practicable to here recount all of the charges appellant made in various uncontroverted affidavits, and repeated in his briefs here, concerning these matters. There is no doubt that his incarceration in San Quentin prison, under sentence of death, made it difficult for appellant to enjoy very much freedom and privacy in connection with these consultations. Some of the prison regulations which brought about this result may have been unnecessary and unreasonable. Upon application prior to the trial, the court entered one or more corrective orders, which brought a measure of improvement.

The application for this writ of habeas corpus was filed on December 30, 1954. It is to be assumed that appellant then had in mind the proof which was available to prove his allegations of fraud. On November 30, 1955, when the mandate from the Supreme Court ordering a hearing was filed, counsel for appellant demanded an early hearing.[13] He had forty-seven more days in which to prepare before the matter came to trial on January 16, 1956.

■ We are not persuaded, on this record, that appellant's opportunity to prepare was so unnecessarily and unreasonably curtailed or interfered with as to deprive him of a full and fair hearing.

The deputy district attorney who tried the original case appeared as one of the counsel for appellee in the instant habeas corpus hearing. Appellant asserts that the trial judge abused its discretion in permitting this to be done.

spectfully resist any delatory tactics or any attempted delays for unnecessary purposes in this case. Mr. Chessman has been in jail seven years. We are ready to proceed; we are—we want action."

■ At the outset of the hearing, appellant resisted a motion that this deputy district attorney be admitted to practice before the court so that he could participate as counsel in the case. The objection was properly rejected, and the motion correctly granted. The fact that this deputy district attorney participated in the original trial in no sense disqualified him from participating as counsel in the habeas corpus hearing.

■ Appellant cannot complain because this attorney was later permitted to testify, since it was appellant who called him to the stand. After this attorney appeared as a witness, he was not required to withdraw from further participation as counsel, since he had not taken the stand as a witness for his client.[14]

■ In any event, the fact that the deputy district attorney in question participated as counsel, after testifying as a witness, would not bear upon his competency as a witness. It would bear only upon his credibility. Bogart v. Brazee, 331 Ill. 160, 162 N.E. 877. The credibility of witnesses is not in issue on this appeal. The participation of this attorney (he examined one witness but did not take part in the oral argument) did not deprive appellant of a full and fair hearing.

Appellant next contends that he was denied a full and fair hearing because his motion to make the state of California a party respondent was denied.

Appellant's purpose in making this motion was to place the deputy district attorney and trial judge who participated in the original hearing and the substitute reporter in the position of officers of an adverse party, subject to impeachment when called by him as witnesses.[15]

■ A party to an action is one who seeks relief, or against whom relief is sought.[16] When one who is held in custody pursuant to the judgment of a state court seeks a writ of habeas corpus, he asserts a right to relief against his custodian, and not against the state. United States ex rel. Elliott v. Hendricks, 3 Cir., 213 F.2d 922. Nor can the state assert a right to relief against such a petitioner.

■ It follows that the state may not be joined as a party in such a proceeding.[17] We find no merit in the contention that the state of California should have been joined as a party.[18]

The court denied appellant's motion, made on January 9, 1956, that the clerk be ordered to supply appellant with a free photostatic copy of the shorthand notes of the deceased reporter. Appellant argues that this could have been done under 28 U.S.C.A. § 2250, and that the denial of his motion marked an abuse of discretion which deprived him of a full and fair hearing.

■ The statute in question requires the clerk to supply "certified copies" of certain documents "as may be required by order of the judge". What, if any, certified copies should be supplied rests within the sound discretion of the judge.

■ The notes were made available to appellant, in the office of the clerk, from December 16, 1955, until the day of the trial. This was a more favorable arrangement than that to which appellant had originally agreed. The motion to require the free photostatic copy was not made until one week before the trial. Assuming, without deciding, that these stenographic notes are the kind of documents or records referred to in the statute, we find no abuse of discretion in the denial of this motion.

---

14. See Canon 19, Canons of Professional Ethics, adopted by the American Bar Association: 62 Reports of American Bar Association (1937) 1105, 1112.

15. See Fed.Rules Civ.Proc., Rule 43(b), 28 U.S.C.A.

16. Fed.Rules Civ.Proc. Rules 19, 20, 28 U.S.C.A.

17. Footnote 16.

18. It may be further noted that appellant points to no instance in the record wherein he was precluded from presenting impeaching evidence.

The final argument advanced in support of appellant's assertion that he was denied a full and fair habeas corpus hearing relates to the alleged personal bias and prejudice of the judge, Honorable Louis E. Goodman.

On November 30, 1955, when the remanded habeas corpus proceeding first came before Judge Goodman, counsel for appellant suggested that the judge voluntarily disqualify himself. Judge Goodman declined to do so. Later the same day, counsel for appellant advised the court that, after discussing the matter with his client, he desired to say nothing more on the question of disqualification.

Thereafter, several pretrial hearings were had. As a result, several orders were entered, from November 30 to December 22, 1955, staying execution, issuing a writ of habeas corpus, relating to appellant's custody, impounding stenographic notes, providing for conferences between appellant and his counsel, fixing the date of trial, and continuing the date of trial.

Later, on December 29, 1955, appellant filed an affidavit under 28 U.S.C.A. § 144, supported by the required certificate of good faith, to disqualify Judge Goodman from trying the case. Five reasons for the belief that bias or prejudice existed were given in this affidavit.[19]

The first of the reasons stated in the affidavit was based upon facts known to appellant on November 30, 1955, when the remanded habeas corpus proceeding was assigned to Judge Goodman. As to this reason, the affidavit filed on December 29, 1955, came too late.

Lipscomb v. U. S., 8 Cir., 33 F.2d 33; Skirvin v. Mesta, 10 Cir., 141 F.2d 668.

The four remaining reasons set out in the affidavit are based upon observations and rulings made by the trial judge while considering the case.

The conduct and rulings of the trial judge in the case itself provide no basis for an affidavit of bias or prejudice. Ex parte American Steel Barrel Company, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440, 444, certiorari denied 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746. As stated in the American Steel Barrel Company case, the statute authorizing the filing of an affidavit of bias or prejudice was

"* * * never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause."[20]

The trial judge, therefore, did not err in declining to disqualify himself.

Quite apart from the efficacy of the affidavit of prejudice, however, is the question whether appellant had a fair trial before a fair tribunal. This is a basic requirement of due process. In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. As stated in the recent case of Knapp v. Kinsey, 6 Cir., 232 F.2d 458, 465:

"One of the fundamental rights of a litigant under our judicial sys-

---

19. The reasons given are as follows: (1) Asserted intemperate observations and arbitrary action in denying the petition when it was originally filed. See In re Chessman, D.C., 128 F.Supp. 600; (2) failure to enter a pretrial order concerning appellant's custody in keeping with views expressed by the judge in an earlier *ex parte* pretrial hearing; (3) the observation made by Judge Goodman, at the pretrial hearing of December 16, 1955, that ". . . this should be in the State of California, but until there is some change in the statutes, we have

got to use this laundry to take care of this matter. . . ."; (4) asserted failure to enforce a previouly entered order concerning arrangements for conferences between appellant and his counsel; and (5) refusal to grant as long a continuance of the trial as appellant had requested.

20. 230 U.S. at page 44, 33 S.Ct. at page 1010, 57 L.Ed. at page 1383. We need not decide whether the original order of January 4, 1955, denying the writ was an "adverse ruling" within the meaning of this rule.

tem is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case."

With this in mind, we have examined the record with respect to the incidents and rulings during the course of the hearing, of which appellant makes complaint in his affidavit.

Some remarks made by the judge at an *ex parte* pretrial hearing may have led appellant to believe that more favorable orders concerning custody and conference arrangements would be made. That the judge, after hearing both sides, changed his mind concerning these matters does not, however, indicate personal bias or prejudice against appellant. Nor was the observation made by the judge, to the effect that there should not be federal judicial intervention in such cases, or his picturesque reference to his court as a "laundry," indicative of personal bias against appellant. The specific rulings of which complaint is made have been examined under other specifications of error, and have been upheld.

██ We conclude that none of the criticized actions and rulings, nor all of them together, evidence anything approaching the personal bias or prejudice which would amount to a denial of due process.

We have now considered, and found without merit, all of the objections raised by appellant as to the conduct of the habeas corpus hearing. Accordingly, we hold that appellant was not denied a full and fair hearing, as impliedly ordered by the Supreme Court.

Under another specification of error, it is argued that the court erred in ruling, on jurisdictional grounds, that it could not declare appellant's rights under 28 U.S.C.A. §§ 2201 and 2202.

On January 24, 1956, one day before the end of the habeas corpus hearing, appellant filed an "application for decla-

ration of rights." One purpose of the application was to establish appellant's right to an unpublished novel, "The Kid Was a Killer," written by appellant. This manuscript had been seized and held by the warden. It was alleged that the sale of the manuscript was necessary to enable appellant to pay his expenses in the habeas corpus case.

A second purpose of the application was to establish the validity of a contract between appellant and one of his counsel. Under this contract, appellant, as substantial payment on attorney's fee, agreed to write a biography of the attorney. It was alleged that the warden had refused to allow appellant to write this biography.

The application was denied on the ground that declaratory relief may not be sought in a habeas corpus proceeding, and that the court had no jurisdiction over the security regulations at the prison.

██ The writ of habeas corpus is concerned solely with the legality of the prisoner's restraint at the time of the filing of the petition for its issue.[21] Declaratory relief of the kind here sought is not within the scope of such a proceeding. The court was, therefore, without jurisdiction to entertain the application, and correctly so ruled.

One specification of error remains to be considered.

Appellant was not permitted to be present at the time the reporter's transcript of the original trial was settled and certified. Nor was he represented by counsel at that hearing, since he had insisted on litigating *in propria persona*. It is argued that, by reason of these facts, appellant was denied due process of law and the equal protection of the laws in connection with his appeal to the California supreme court. Accordingly, appellant contends, the trial court, in this habeas corpus proceeding, erred in not ordering appellant discharged from custody.

21. Dunlap v. Swope, 9 Cir., 103 F.2d 19, citing McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, and Smith v. Johnston, 9 Cir., 83 F.2d 821.

This issue was tendered in the application for a writ of habeas corpus. It was not, however, the issue which concerned the United States Supreme Court in reversing and remanding for a hearing on the application. As noted above, the opinion of the Supreme Court directs attention only to the undenied charge of fraud in preparing and settling the transcript.[22]

Because of this, the trial court, on remand, limited its consideration of the case to the question of fraud. The extensive opinion of the trial court contains no discussion of the issue which appellant presents under this specification of error. Nor are there any findings of fact or conclusions of law which deal with that issue.

We assume, without deciding, that, despite the circumstances just indicated, appellant may here present the question now under discussion.[23]

That precise question, however, has heretofore been considered, and decided adversely to appellant, by both the California supreme court and this court.[24]

In holding against appellant on a similar contention, the California supreme court said:

" * * * Neither reason, public policy, nor any express provision of law requires defendant's personal presence at proceedings to determine the accuracy of a transcript. * * *

In the trial court he was repeatedly offered and refused counsel * * *. In these circumstances he cannot complain that he has been prejudiced by the fact that he has not, since his conviction, been allowed to appear personally in court." People v. Chessman, 35 Cal.2d 455, 467, 218 P. 2d 769, 776.

When the identical question was before this court in 1953, we held against Chessman, saying:

"There is no merit in the contention that the due process provisions of the Fourteenth Amendment were violated. The Constitution gives no right to appear in person or by counsel on a criminal appeal. Whether to grant an appeal, and the terms upon which it will be granted are purely matters of local law over which federal courts have no control. [Citing and quoting Andrews v. Swartz, 156 U.S. 272, 274–275, 15 S.Ct. 389, 39 L.Ed. 422.] * * * And that there can be no denial of due process in the procedure used to settle the record on appeal, see Dowdell v. United States, 221 U.S. 325, 328–329, 31 S.Ct. 590, 55 L.Ed. 753." Chessman v. People, 205 F.2d 128, 131.

■ These decisions should not be construed as holding that the Fourteenth Amendment does not apply to settlement

22. The charge was "undenied" only because the petition was summarily dismissed before hearing. Similar charges of fraud had been repeatedly made, denied, and rejected in prior proceedings, as noted and documented in In re Chessman, 43 Cal.2d 391, 408, 274 P.2d 645, certiorari denied Chessman v. People of State of Cal., 348 U.S. 864, 75 S.Ct. 85, 99 L.Ed. 681.

23. The certificate of probable cause, issued by a judge of this court, pursuant to which this appeal is brought, is based exclusively upon this due process and equal protection question.

24. People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, certiorari denied Chessman v. California, 340 U.S. 840, 71 S.Ct. 29, 95 L.Ed. 616; Chessman v. People, 9 Cir., 205 F.2d 128, certiorari denied Chessman v. California, 346 U.S. 916, 74 S.Ct. 278, 98 L.Ed. 412. The California supreme court later re-examined the same question, and adhered to its previous ruling. People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001, 1005, certiorari denied Chessman v. California, 343 U.S. 915, 72 S.Ct. 650, 96 L.Ed. 1330. An aspect of the same issue was also considered by this court and decided adversely to appellant in Chessman v. Teets, 221 F.2d 276, reversed on other grounds Chessman v. Teets, 350 U.S. 3, 76 S.Ct. 34, 100 L.Ed. 4. In this decision, we said: "Chessman waived his right to counsel and is now precluded from urging denial of his constitutional right upon this ground." 221 F.2d at page 278.

proceedings. It clearly does, as evidenced by the fact that our later decision in the instant case was reversed on the ground that appellant's charge of fraud in connection with such proceedings invoked the the Fourteenth Amendment.[25] Similarly, had appellant charged fraud in connection with the argument to, or consideration by, the California supreme court, the Fourteenth Amendment would have been invoked.

■ But, although the Fourteenth Amendment stands in the way of fraud at any stage of litigation, it does not follow that it also guarantees the personal appearance of the defendant at every stage. That it does not afford such a guarantee in connection with settlement proceedings, is the proposition we were stating in the above quotation. The basic premise of this proposition is that the proceeding in which the transcript was certified was a part of the appeal procedure, and not a part of the trial at which appellant's conviction was obtained.

We adhere to that basic premise. Due process does not require the personal presence of a prisoner, even in a capital case, for the consideration of his appeal. See Schwab v. Berggren, 143 U.S. 442, 12 S.Ct. 525, 36 L.Ed. 218.

It is true that in such settlement proceedings there are questions of fact to be determined. However, they are questions having to do with the settling and certification of the transcript for purposes of appeal. They involve no inquiry into the guilt or innocence of the defendant. Thus, while the substitute reporter testified at the settlement hearing, he did not appear as a witness for or against the accused. A similar contention that due process required the presence of a defendant at the hearing where the record was amended and certified was specifically rejected in Dowdell

v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753.

There is here no contention that appellant was denied a right which is customarily accorded to other convicted persons.[26] Had such a showing been made, a serious constitutional question would be presented. See Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585.

We have not overlooked the fact that the transcript in question was prepared under unusual circumstances, due to the untimely death of the original court reporter. It is unquestionably true that this raised more serious questions concerning the accuracy and completeness of the transcript than normally arise.

■ The circumstances just mentioned did not, however, give rise to an absolute constitutional right, otherwise nonexistent, of personal appearance at the settlement proceedings. They called only for the exercise of a sound discretion in adopting procedures adequate to meet the special situation. While the unprecedented privilege of personal participation was denied appellant, he was permitted to, and did, submit extensive written objections. All of these were considered, and some were sustained. Appellant could also have been represented by counsel, had he so chosen.

That the procedures adopted were reasonable and adequate to assure a correct and complete transcript is substantiated by the findings made in the instant habeas corpus hearing. In his application for this writ, appellant alleges that an erroneous and prejudicial instruction and an erroneous and prejudicial comment to the jury were omitted from the transcript. These are the only wrongs asserted to have been done him. But the trial court in the proceeding now under review expressly found that no such instruction had been given or comment made.

25. See footnote 6.

26. Rule 33, Rules on Appeal, adopted by the Judicial Council of the State of California, specifying the procedure to be followed, provides for the filing of an ap-

plication by the appellant for augmentation of the record. It does not, however, provide for the personal appearance of the appellant at the time the record is settled and certified.

This finding was made after a hearing in which appellant appeared personally and testified. At this hearing, he was also represented by two attorneys, had the services of an investigator, produced witnesses, introduced exhibits, had full right of cross-examination, and did cross-examine the only witness who had appeared at the settlement hearing. Appellant has not questioned this finding, though he has made what we have found to be an unmeritorious attack upon the fairness of the hearing.

There is no reason to believe that, if appellant had been personally present at the settlement proceedings, the outcome as to the questioned instruction and comment would have been any different than it was in this habeas corpus hearing. In fact, there is no reason to believe that these points would have been raised, since they were not raised in the written objections which appellant filed at that time.

 We conclude that appellant was not constitutionally entitled to appear in person and to participate in the settlement of the transcript.

Affirmed.

DENMAN, Chief Judge (dissenting).

Since the Supreme Court holds the due process of the Fourteenth Amendment applies to the trial in the Los Angeles Superior Court to create a record of what happened there, as the basis of an appeal from Chessman's death sentence, the Superior Court's admitted refusal to permit him to participate in the trial, denied him due process. Hence the Superior Court's order creating the record must be set aside and the California Supreme Court's affirmation based on that record also must be set aside and the trial for the determination of the record proceed anew in the Los Angeles Superior Court with Chessman participating therein.

### Piecemeal Due Process

I dissent from the extraordinary doctrine that the due process clause of the Fourteenth Amendment applies only *in part* to the Los Angeles County Superior Court's trial of facts to determine the transcript of what had transpired in that court, as the basis for the review of that court's death sentence in the California Supreme Court.

Nothing is better established than that the due process of the Fourteenth Amendment requires that a party affected by the decision of a trial shall be given notice and an opportunity to participate in it and that, if this be denied, the decision made in his absence must be set aside.[1]

Here was a trial in the Los Angeles County Court to determine what had happened in that court leading to Chessman's death sentence. That county court alone had jurisdiction of the trial for the determination of the record. The record was taken by a reporter who died when he had transcribed but a thousand of the three thousand pages of his shorthand notes. They were written in a system undecipherable by another reporter, a *witness* at the restoration trial. The order for the determination of the record is based on the testimony of witnesses before the Los Angeles County Court of what they heard and remembered of what was said producing the death sentence by the parties' witnesses and of the judge's statements to the jury during the trial and of his final instructions to the jury. What the trial before the judge produced was this record of at least 2,000 pages of the testimony.

Chessman's request that he be present in the determination of the 2,000 pages on which his life or death depended was denied by the trial court, though the

1. Powell v. Alabama, 287 U.S. 45, 67, 53 S.Ct. 55, 77 L.Ed. 158; Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674; Saunders v. Shaw, 244 U.S. 317, 318, 37 S.Ct. 638, 61 L.Ed. 1163; Railroad Comm. v. Pacific Gas, 302 U.S. 388, 393, 58 S.Ct. 334, 82 L.Ed. 319; Ohio Bell Tel. Co. v. Public Utilities Commission, 301 U.S. 292, 304, 57 S.Ct. 724, 81 L.Ed. 1093; Standard Oil Co. v. Missouri, 224 U.S. 270, 281, 32 S.Ct. 406, 56 L.Ed. 760.

right to cross-examine the witnesses produced by the prosecuting attorney and in *Los Angeles to seek for and produce other witnesses from the clerks and jurors who heard the trial,* is of the essence of due process. No clearer case could be had for a litigant's presence in the *vicinage of the trial,* i. e., Los Angeles County, where witnesses could be summoned and directly examined and cross-examined and distant depositions not necessary.

It will be remembered that the United States District Court, sitting in the Northern District of California at San Francisco, held it could not summon witnesses from Los Angeles, 400 miles distant.

No one can question that Chessman would have been entitled to a reversal if he had been able to maintain his contention that the judge instructed the jury that if they found he had committed the offense charged they *must* render a verdict for the death penalty, although Section 209 of the California Penal Code provides that they have the discretion to choose between life imprisonment and the death penalty. Reinforcing this is his claim that the true record would show grossly prejudicial statements made by the prosecuting attorney and the presiding judge.

The majority opinion is forced to admit that the Supreme Court has held that the due process of the Fourteenth Amendment applies to the claimed procuring of perjured testimony but it claims that another violation of due process does not. It proceeds on a piecemeal application of the Fourteenth Amendment. In this it relies on Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753, but omits to state that in that case all the testimony of the criminal trial was written up by a living reporter and that appellant had counsel during his appeal. The point is summarized by the following headnote on page 325 of 221 U.S., 31 S.Ct. 590:

"Although due process of law requires the accused to be present at every stage of the trial, it does not require accused to be present in an appellate court where he is represented by counsel and where the only function of the court is to determine whether there was prejudicial error below."

Likewise the majority opinion relies on Schwab v. Berggren, 143 U.S. 442, 449, 12 S.Ct. 525, 527, where again the Supreme Court confined its ruling to the consideration of *questions of law* before the appellate court and suggests that where there are other questions involved the rule might be otherwise, stating:

"But neither reason nor public policy require that he shall be personally present pending proceedings in an appellate court *whose only function is to determine whether, in the transcript submitted to them,* there appears *any error of law to the prejudice of the accused,* especially, where, as in this case, he had counsel to represent him in the court of review. *We do not mean to say that the appellate court may not, under some circumstances, require his personal presence; but only that his presence is not essential to its jurisdiction* to proceed with the case." (Emphasis added.)

The majority opinion further ignores the subsequent cases in the Supreme Court clearly distinguishing these earlier decisions. Among them is the recent case of Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644, where the Supreme Court ruled that:

"* * * since Arkansas provides for an appeal to the State Supreme Court and on that appeal considers questions raised under the Federal Constitution, *the proceedings in that court* are a part of the process of law under which the petitioners' convictions must stand or fall. Frank v. Mangum, 237 U.S. 309, 327, 35 S.Ct. 582, 587, 59 L.Ed. 969. Cf. Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791." (Emphasis added.)

Nor is considered In re Oliver, 333 U. S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed.

682, where the State Supreme Court affirmed on appeal a contempt judgment "without ever having seen the record of his [appellant's] testimony" and the affirmation set aside on the ground that the appellant had been denied his liberty without due process of law of the Fourteenth Amendment.

Nor does the opinion consider Frank v. Mangum, 237 U.S. 309, at page 327, 35 S.Ct. 582, at page 587 where the court states:

> "And while the 14th Amendment does not require that a state shall provide for an appellate review in criminal cases * * *, it is perfectly obvious that where such an appeal is provided for, and the prisoner has had the benefit of it, the proceedings in the appellate tribunal are to be *regarded as a part of the process of law under which he is held in custody by the state, and to be considered in determining any question of alleged deprivation of his life or liberty contrary to the 14th Amendment.*" (Emphasis added.)

From these later cases it is apparent that if the Supreme Court itself had conducted the trial in which the 2,000 pages of record were established by the memory of witnesses, it would have been a violation of due process to deny Chessman's request to participate in the proceedings. A fortiori, is it a denial of due process where he was excluded from the proceeding in the *Los Angeles Superior Court.*

The District Court of the Northern District of California *by merely ignoring* Chessman's contention of his right to participate in the Los Angeles County evidence restoration hearing, cannot create in itself the right in San Francisco to determine what the record should or should not contain.

Since it is not questioned that Chessman was denied his right to participate in the Los Angeles proceeding, this court should order that the record there created should be set aside and likewise the affirming judgment based on it.

Upon Petition for Rehearing

PER CURIAM.

The petition for rehearing is denied.

DENMAN, Chief Judge (dissenting).

I dissent from the denial of the petition for rehearing.

This is clearly a case where the court first finds that the due process clause of the Fourteenth Amendment applies for all appeals created by state law and then in this appeal, a matter of life or death to the appellant, says that it is inapplicable to a trial to determine the text of the record upon which the death sentence is to be determined as valid or invalid.

On Denial Of Petition For Rehearing.

LEMMON, Circuit Judge.

In view of Chief Judge Denman's insistence that the due process clause of the Fourteenth Amendment guarantees the personal appearance of the defendant at settlement proceedings to determine the accuracy of a transcript, I deem it desirable that I should give my reasons for concurring with Judge Hamley in denying Chessman's petition for a rehearing.

Chief Judge Denman persists in ignoring the opinion of the Supreme Court in 350 U.S. 3, 4, 76 S.Ct. 34, 35, which is not only the chart by which we must plot our course, but which marks the *extreme limits* of our *jurisdiction* in this cause.

Although the Supreme Court's opinion is quoted in part by Judge Hamley in his able opinion of October 18, 1956, in which I unreservedly and heartily concur, in view of Chief Judge Denman's persistent ignoring of our limited jurisdiction in this case, I believe that it might be helpful to enlarge the quotation.

Speaking Per Curiam, the Supreme Court said:

> "The official court reporter had died before completing the transcription of his stenographic notes of the trial, and petitioner alleges that the prosecuting attorney and the substitute reporter selected by

him had, by *corrupt* arrangement, prepared the *fraudulent* transcript. On the record before us, there is no denial of petitioner's allegations. The District Court, without issuing the writ or an order to show cause, dismissed the application as not stating a cause of action. 128 F. Supp. 600. The Court of Appeals affirmed the order of the District Court. 9 Cir., 221 F.2d 276. The charges of *fraud* as such set forth a denial of due process of law in violation of the Fourteenth Amendment. See Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791. Without intimating any opinion regarding the validity of the claim, we hold that in the circumstances disclosed by the record before us the application should not have been summarily dismissed. *Accordingly,* the petition for a writ of certiorari is granted, the judgment of the Court of Appeals is reversed and the case is remanded to the District Court for a hearing." [Emphasis supplied.]

If the English language means anything at all, the opinion of the Supreme Court conveyed a command to the District Court that it inquire into Chessman's charges of "fraud" and "corrupt arrangement", *and nothing more.* Beyond that, neither the District Court nor this Court has a particle of jurisdiction.

As the main opinion states, pursuant to this mandate of the Supreme Court, a writ of habeas corpus was issued by the District Court, a hearing consuming seven days was had, and the District Court filed an opinion, findings of fact, and conclusions of law, to the effect that Chessman had failed to support the allegations of his application. From the District Court's judgment discharging the writ, the present appeal was taken.

As Judge Hamley states in the majority opinion herein, although the Fourteenth Amendment prohibits *fraud* at any stage of litigation, it does not follow that it guarantees the personal appearance of the defendant in proceedings to settle the record on appeal.

The majority opinion goes further and points out that the District Court found that there was no factual basis for Chessman's allegation that the transcript on appeal had been fraudulently prepared, and also states that Chessman does not directly challenge any of those findings.

With the above findings and holdings, the jurisdiction of the District Court and of this Court ends. *Ex industria,* however, the majority opinion holds that appellant was not constitutionally entitled to appear in person and to participate on the settlement of the transcript.

The matter should end there.

It has been said that the substantive criminal law is for the protection of the public, and the procedural criminal law is for the protection of the innocent. Nowhere does Chessman claim that he is innocent.

In this connection, I might advert to the fact that the House of Representatives of the United States on January 19, 1956, passed H.R. 5649, which provides that "A Justice of the Supreme Court, a circuit judge or a district court or judge shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court, only on a ground which presents a substantial Federal constitutional question (1) which was not theretofore raised and determined, (2) which there was no fair and adequate opportunity theretofore to raise and have determined, and (3) which cannot thereafter be raised and determined in a proceeding in the State court, by an order or judgment subject to review by the Supreme Court of the United States on writ of certiorari."

I am in hearty accord with the spirit of this bill, which I understand has not yet been passed by the United States Senate. Even in the absence of such a law, however, I am of the firm conviction that no United States Court should, in the absence of cogent Constitutional reasons wholly absent in this case, interfere with the lawful process of the courts of any State.

Chessman's case has been before the courts of California and of the United States for many years. The "law's delay" in this case has become a national scandal. The details of that delay are carefully spelled out in the majority opinion, and it would be a work of supererogation for me to trace it further.

There remains only one more step to be taken in the case of the State of California versus Caryl Chessman. That step will be to carry out one of the two sentences of death entered against Chessman eight and a half years ago.

Chessman has been accorded all due process except the long overdue process of his execution. By such execution, perhaps, the blot upon the California's juristic escutcheon will be, if not wholly erased, at least partly dimmed.

DENMAN, Chief Judge.

No better illustration could be had of the aphorism "hard cases make bad law," than Judge Lemmon's opinion in denying Chessman's petition for rehearing in this case. After first concurring in Judge Hamley's opinion considering the two denials of due process claimed by Chessman, in this opinion on the requested rehearing he asserts that the Supreme Court's decision in 350 U.S. 3, 75 S.Ct. 34 made one of the contentions, so decided in Judge Hamley's opinion, beyond this court's jurisdiction.

In stating that Chessman has been deprived of the right so recognized by Judge Hamley, Judge Lemmon appears to be moved by the fact, as he states it, that "Chessman's case has been before the courts of California and of the United States for many years. The 'law's delay' in this case has become a national scandal."

I do not agree with the contention that the same question of law is to be decided in one way if considered at the beginning of a prosecution, and in a different way if it is for consideration after seven years of prosecution of the same case.

Equally unfair to Judge Hamley is Judge Lemmon's criticism that he gave consideration to Chessman's second contention, when the court had no jurisdiction so to act.

Nor do I agree with Judge Lemmon that a litigant's claim to a constitutional right in an instant case, is to be construed one way if he has no prior convictions and the opposite way if he has a dozen priors.

Two different claims of denial of due process were presented by Chessman's application to the district court. One is the contention of "fraud" on Chessman by the preparation of a false transcript of the proceedings at the trial as a result of which were omitted rulings and statements of the trial judge which, if true, would warrant a reversal. The second such denial of due process is the denial of Chessman's requested right to participate in the proceeding in which, on account of the death of the reporter, 2000 pages of the record had to be made up on the testimony of witnesses, who should have been subject to his cross-examination. Further, had he been present in Los Angeles he would have been able to produce evidence from the jurors and others present in the courtroom to sustain his contention respecting the claimed omitted rulings.

The difference between the two kinds of denial of due process is so obvious that, as seen, Judge Hamley gave it a separate consideration in his opinion. That the Supreme Court passed only on the fraud contention is apparent from the quoted matter in Judge Lemmon's opinion. Nowhere does it deny the District Court the jurisdiction to consider the second contention presented in Chessman's application for the writ.

. Though it may well be a matter of life or death to Chessman, Judge Lemmon would have it that the Supreme Court in its opinion overruled, sub silentio, its several holdings that any important appellate proceeding is a part of the due

process of the Fourteenth Amendment.[1] Here the making up of 2000 pages of testimony for the appeal, largely by the testimony of witnesses as to what they heard, is of vital importance and hence that Chessman should have participated in it.

In neither our opinion in Chessman v. Teets, 9 Cir., 221 F.2d 276, nor in the Supreme Court opinion in 1955, 350 U.S. 3, 75 S.Ct. 34, is mentioned, much less disposed of, Chessman's contention. It is absurd to argue in any case, that the Supreme Court, by mere silence on a contention not presented to it, decides that contention adversely to the party making it. A fortiori is the absurdity of such a contention in a capital case.

1. Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644; In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 and in Frank v. Mangum, 237 U.S. 309, 322, 35 S.Ct. 582, 59 L.Ed. 969, more fully considered in Chessman v. Teets, 9 Cir., 239 F.2d 219.